# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------- X

| | | |
|---|---|---|
| UNITED STATES STEEL CORPORATION, | : | |
| NIPPON STEEL CORPORATION, and NIPPON | : | Civil Action No.: 2:25-cv-15 |
| STEEL NORTH AMERICA, INC., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **JURY TRIAL DEMANDED** |
| vs. | : | |
| | : | |
| CLEVELAND-CLIFFS INC., LOURENCO | : | |
| GONCALVES, and DAVID McCALL, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------- X

## PLAINTIFFS' MOTION FOR EXPEDITED PROCEEDINGS
## ON CLAIMS RELATING TO UNLAWFUL AGREEMENT BETWEEN
## <u>CLEVELAND-CLIFFS INC. AND UNITED STEELWORKERS UNION</u>

Thomas E. Birsic
K&L GATES LLP
210 Sixth Avenue
Pittsburgh, PA  15222

Grant R. Mainland
MILBANK LLP
55 Hudson Yards
New York, NY  10001

Jonathan M. Moses
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019

*Attorneys for Plaintiff United States Steel
Corporation*

Daniel I. Booker
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222

David B. Hennes
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY  10036

*Attorneys for Plaintiffs Nippon Steel
Corporation and Nippon Steel North
America, Inc.*

*(Additional counsel listed on signature page)*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT .................................................................................................................... 9

    I.      Plaintiffs Have Good Cause to Seek Expedited Discovery in Aid of Their Motion for a Preliminary Injunction. ...................................................................9

    II.     Plaintiffs Have Good Cause to Seek an Expedited Preliminary Injunction Hearing. ..............................................................................................................13

    III.    Plaintiffs' Proposed Schedule for Expedited Proceedings....................................14

CONCLUSION............................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Davila*,
    125 F.3d 148 (3d Cir. 1997)..................................................................13

*Croft v. Donegal Twp.*,
    2020 WL 6803051 (W.D. Pa. Nov. 19, 2020) ........................................11

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*,
    2021 WL 1740582 (M.D. Pa. May 3, 2021)......................................9, 13

*Exclusive Supplements, Inc. v. Abdelgawad*,
    2013 WL 160275 (W.D. Pa. Jan. 15, 2013)..........................................10

*Flatiron Crane Operating Co. v. Adkins*,
    2023 WL 4565470 (E.D. Pa. July 17, 2023)............................................9

*Kone Corp. v. ThyssenKrup USA, Inc.*,
    2011 WL 4478477 (D. Del. Sept. 26, 2011)....................................10, 12

*Mesabi Metallics Co. LLC v. Cleveland-Cliffs, Inc. (In re Essar Steel Minn. LLC)*,
    Adv. Proc. No, 17-51210 (CTG),  2024 WL 4047451 (Bankr. D. Del. Sept. 4,
    2024) ........................................................................................................2

*Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*,
    1998 WL 404820 (E.D. Pa. July 15, 1998)...........................................12

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017)..................................................................10

*Ride the Ducks of Phila., LLC v. Duck Boat Tours, Inc.*,
    2005 WL 1583514 (3d Cir. July 6, 2005)..............................................13

*Samuel, Son & Co. v. Beach*,
    2013 WL 4855325 (W.D. Pa. Sept. 11, 2013)...................................9, 12

*Sawhorse Enterprises, Inc. v. Church & Dwight Co., Inc.*,
    2013 WL 1343608 (D.N.J. Apr. 3, 2013) ...............................................9

*Wash. Trotting Ass'n, Inc. v. Penn. Harness Horsemen's Ass'n*,
    428 F. Supp. 122 (W.D. Pa. 1977)........................................................13

This case challenges a conspiracy to eliminate United States Steel Corporation ("U. S. Steel") as the closest and most important competitor to Cleveland-Cliffs Inc. ("Cliffs") in order to destroy competition in iron and steel markets vital to American consumers and the American economy.  (*See* Complaint, Dkt. No. 1.)

Defendants Lourenco Goncalves, Cliffs' CEO, and David McCall, President of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the "USW"), have publicly acknowledged their unlawful agreement to force U. S. Steel to merge with Cliffs (an anticompetitive monopolist), prevent U. S. Steel from partnering with *anyone* else, and thwart a $14.9 billion merger between U. S. Steel and Nippon Steel Corporation and Nippon Steel North America, Inc. ("NSNA" and, together with Nippon Steel Corporation, "NSC").  Through this action, U. S. Steel and NSC seek a preliminary injunction to put a stop to Defendants' performance of this unlawful agreement and tortious interference with this pro-competitive merger, along with the harms to competition that Defendants are continuing to cause.  (*See* Dkt. No. 3.)  In light of the serious and irreparable injury that Plaintiffs are suffering from this ongoing scheme, as well as a June 18, 2025 contractual outside date for closing the merger and the significant harm that will result to local steelmaking communities if the merger does not proceed, Plaintiffs are seeking an Order providing for discovery and briefing on the expedited timetable proposed herein and setting an evidentiary hearing on Plaintiffs' motion for a preliminary injunction commencing on or about April 21, 2025, or as soon thereafter as is practicable for the Court.

## PRELIMINARY STATEMENT

U. S. Steel is an integrated steel producer formed in 1901 through an historic merger of Carnegie Steel Company, Federal Steel Company, and National Steel Company.  Once the largest

steel producer and even the largest corporation in the world, U. S. Steel has faced significant headwinds over the past many decades and is now a fraction of its former size.

To compete effectively in the 21st-century steelmaking industry, U. S. Steel has looked for ways to innovate. To do so, it needs two critical ingredients—capital and advanced technology. It found both in the form of a strategic merger with NSC (the "Merger"), which was announced in December 2023 but has not closed. Through the Merger, NSC has committed to invest billions in U. S. Steel's operations and to bring substantial technological know-how that will bolster U. S. Steel's competitive strength, including in traditional blast furnace steelmaking and developing markets such as high-grade electrical steel that are vital to the U.S. economy and security.

Cliffs is an unscrupulous competitor that has engaged in a years-long anticompetitive quest to monopolize domestic steelmaking assets. Cliffs' campaign against the Merger is only its latest salvo in a long-running anticompetitive scheme that must be enjoined to protect the integrity of U.S. steel markets and, in turn, the American economy. Cliffs' monopolization campaign stretches back to at least 2020, when Cliffs embarked on a strategy of leveraging its market power in iron ore production[1]—a critical input to the production of steel—by acquiring several key steel production facilities in the United States. Rather than innovate to address the challenges that had been buffeting the domestic steel industry for years, Cliffs sought to buy up the industry, in collusion with the USW's leadership. Executing this anticompetitive strategy with union support, Cliffs quickly became the largest fully integrated blast furnace steel producer in the United States.

In furtherance of that anticompetitive conspiracy, Defendants agreed to force U. S. Steel to merge with Cliffs and prevent U. S. Steel from partnering with any other counterparty, including

---

[1] Cliffs has already been found to be a monopolist in the market for iron ore. *See Mesabi Metallics Co. LLC v. Cleveland-Cliffs, Inc. (In re Essar Steel Minn. LLC)*, Adv. Proc. No, 17-51210 (CTG), 2024 WL 4047451, at *27 (Bankr. D. Del. Sept. 4, 2024), Dkt. No. 1074.

NSC.  Defendants recognize that the Merger would frustrate their agreed-upon goal of Cliffs obtaining an unlawful monopoly over key steel markets and, instead, would present Cliffs with a formidable and well-capitalized competitor.  Thus, Cliffs and the USW leadership have not only made clear that they will continue to work together to prevent the Merger from closing, but also that they will work to block any other bidder who might seek to acquire or partner with U. S. Steel.  Key to Cliffs' effort is a "merge or murder" strategy—Cliffs is seeking to protect and enhance its market dominance either by acquiring U. S. Steel, or if it cannot do that, by so damaging U. S. Steel that it will not be able to compete effectively in steel markets of critical importance.

As will be demonstrated, Cliffs' agreement with the USW is an illegal restraint on trade that is designed to protect and enhance Cliffs' dominant positions in certain important iron and steel markets.  Indeed, as detailed in the Complaint, Goncalves has openly described Cliffs' alliance with the USW as creating "a ***de-facto veto power*** to disallow the acquisition of the entirety of U. S. Steel or USW-represented assets by anyone else other than Cleveland-Cliffs" (emphasis added).  For the USW leadership—which stands by this agreement despite the Merger's benefits to and vast support from rank-and-file union members—the agreement entrenches McCall's and other USW leaders' power and, they claim, advances their agenda to keep the steelmaking industry firmly rooted in traditional blast furnace production, which has traditionally been the domain of unionized labor.  Regardless of the USW leadership's motivations for ignoring the views of union members who support the Merger, Defendants' agreement is plainly illegal and anticompetitive.  And for U. S. Steel, the agreement is undermining its competitive strength.  If the Merger collapses, U. S. Steel will be limited in its ability to explore pro-competitive strategic alternatives, paving the way for further monopolization of the industry by Cliffs.  Likewise, absent injunctive

relief, NSC may forever lose this unique opportunity to transform its U.S. operations and deliver high-quality steel products to American consumers.

That President Biden recently issued an unprecedented and unlawful Executive Order blocking the Merger, purportedly on grounds that the sale of Pennsylvania-based U. S. Steel to NSC, which is based in Japan—one of America's closest allies—constitutes a national security risk that cannot be mitigated, does not put an end to the conspiracy. The Plaintiffs are challenging that clear violation of their due process and statutory rights in parallel expedited litigation in the D.C. Circuit that highlights the President's illegitimate political motivations for his pretextual Executive Order and the sham process that led to it. But, in all events, the Executive Order does not mean that Cliffs and the USW's collaboration has run its course.[2] A ruling setting aside the Executive Order will only remand the matter for further process, during which Defendants would continue to disrupt the Merger; it will not guarantee that the Merger will close. And if Plaintiffs' challenge to the Executive Order is unsuccessful, U. S. Steel will need to immediately determine its plan going forward, but Cliffs and the USW will continue to use their unlawful agreement to deter partners other than Cliffs from emerging and to otherwise limit U. S. Steel's ability to pursue other strategic alternatives. Indeed, Cliffs has been clear for over a year that, armed with its alliance with the USW's leadership, it will not stop until it either acquires U. S. Steel or mortally wounds it.

---

[2] While the Executive Order purports to direct Plaintiffs to "abandon" the Merger within 30 days, that deadline may be extended by the Committee on Foreign Investment in the United States ("CFIUS"). Plaintiffs intend to promptly address with the government whether it intends to enforce this aspect of the Executive Order while the D.C. Circuit litigation challenging the Executive Order is pending. Regardless, for the reasons explained above, a preliminary injunction will remain necessary to forestall ongoing irreparable harm to U. S. Steel's ability to compete.

The consequences of Defendants' agreement both to Plaintiffs and to competition at large already have been severe. The illegal agreement has not only deprived U. S. Steel of the competitive boost offered by NSC, but also succeeded in blocking NSC's significant efforts to expand its footprint in the United States. In the meantime, competition in iron and steel markets is the loser as Cliffs achieves ever greater market power and uses that market power to increase prices and restrict output, as Cliffs' Goncalves has brazenly admitted. Higher prices, reduced output, and a loss of innovation are the intended result of Cliffs' scheme, and these competitive harms will only grow worse by the day, all to the detriment of U.S. consumers.

Nowhere will the harms of Cliffs' scheme be felt more acutely than in Pennsylvania's Mon Valley. NSC has committed to spend $1 billion to replace or upgrade the facilities at U. S. Steel's Mon Valley Works plant, and billions more to revamp other U. S. Steel facilities. NSC also plans to share its advanced and ecologically friendly blast furnace technology, which will enhance the competitiveness of Mon Valley Works and other blast furnace plants for many years to come. By contrast, Cliffs has said that, if it succeeds in acquiring U. S. Steel, it will close or significantly cut back operations at Mon Valley. It is for this reason that local rank-and-file USW members and Mon Valley community leaders have actively rallied in support of the Merger.

As Plaintiffs will show at the hearing following a period of targeted discovery, a preliminary injunction against Cliffs' illegal agreement with McCall and the USW is clearly warranted under governing law and is necessary to prevent further irreparable harm to Plaintiffs.

***First***, Plaintiffs are likely to succeed on the merits of their claims that the agreement violates both Sections 1 and 2 of the Sherman Act and also constitutes tortious interference under applicable state law. Section 1 prohibits agreements in restraint of trade. There is no question that Cliffs, Goncalves and McCall, acting on behalf of the USW, have conspired. While they may now

seek to deny it, Goncalves and McCall have openly bragged about their agreement as a means of blocking the Merger, forcing a deal with Cliffs, and otherwise limiting U. S. Steel's strategic options. Their agreement is so plainly anticompetitive as to constitute a *per se* violation of Section 1 and, at a minimum, the agreement unreasonably lessens competition. As for Section 2, which prohibits conspiracies to monopolize (in addition to monopolization and attempted monopolization), Plaintiffs are likely to show that Cliffs is already a monopolist or near monopolist in certain key steel markets (certain types of high-grade electrical steel and iron ore pellets); that it has significant market power in others (exposed automotive steel); and that the illegal agreement is a key tool by which Cliffs, with the active support of McCall and the USW, has sought to obtain or maintain its monopoly power in key steel markets. U. S. Steel is a competitive threat in these markets. As a monopolist, any attempt by Cliffs to acquire a rival or potential rival is presumptively anticompetitive. Plaintiffs will also readily show that Defendants have tortiously interfered with the Merger.

**Second**, Plaintiffs will suffer irreparable harm absent a preliminary injunction. As noted, Plaintiffs are challenging the Executive Order blocking the Merger in expedited litigation in the D.C. Circuit. Regardless of the outcome of that effort, Defendants' unlawful agreement will continue to harm U. S. Steel and NSC, as set forth above. The damage to Plaintiffs and the thousands of workers whose jobs are at stake will be irreversible and will not be redressable by monetary damages. Likewise, the unique and valuable opportunity of the transaction for U. S. Steel's public stockholders may forever be lost. The agreement will also impair NSC's ability to enter North American steel markets and challenge Cliffs. Only an injunction can protect Plaintiffs from the ongoing harm that is certain to continue absent judicial intervention.

*Third*, the balance of hardships weighs overwhelmingly, if not entirely, in Plaintiffs' favor. If Defendants' illegal agreement is not enjoined, U. S. Steel will be deprived of the capital and technology that the Merger would provide. U. S. Steel will also be substantially limited—by Cliffs' purely anticompetitive design—in its ability to pursue strategic alternatives. NSC, too, would lose a unique opportunity to expand its operations in the United States, help secure U. S. Steel's future in America, and increase the volume (and quality) of American-made steel available to American consumers. By contrast, if the illegal agreement is enjoined, Cliffs will have to face a reinvigorated U. S. Steel on a fair playing field. While Cliffs may well experience such competition as a "hardship," that is not a hardship the antitrust laws are intended to protect against.

*Fourth*, a preliminary injunction will undoubtedly serve the public interest. As an initial matter, if Cliffs remains free to leverage its alliance with the USW to attack the Merger as part of its long running monopolistic strategy, that will likely result in substantial job loss and departure of key U. S. Steel employees. If the Merger ultimately collapses, U. S. Steel will likely have no choice but to idle certain of its main steelmaking facilities, including the Mon Valley Works—consistent with its plans prior to the Merger. And the idling of these facilities will severely damage the surrounding local economies—which is exactly why the mayors of the affected communities have vocally supported the Merger. Steel consumers and the American public will also be deprived of NSC's investments that will make for more competitive markets in critical steel products such as exposed automotive steel and high-grade electrical steel. This result would not only injure Plaintiffs, but also the public in the form of higher prices resulting from Cliffs' continued monopolization of critical markets. Moreover, even if the Executive Order stands, the public interest demands that U. S. Steel be allowed to seek out the full panoply of alternatives to

7

strengthen its competitive position, rather than being forced to contend with an unlawful agreement that limits its strategic options.

That is a preview of the case Plaintiffs intend to put on before the Court this spring. But targeted discovery into Defendants' unlawful agreement before the preliminary injunction hearing is critical, particularly where, as here, the antitrust co-conspirators already have openly bragged about their illegal alliance and the higher prices resulting therefrom. Those admissions are only the tip of the iceberg. Defendants will most assuredly deny the scope of their agreement and attempt to evade full disclosure of their intentions. Indeed, at a press conference held immediately after the Executive Order was issued, McCall feigned that he had no particular interest in a Cliffs acquisition of U. S. Steel. As the detailed allegations in the Complaint make clear, nothing could be further from the truth. Discovery will confirm the scope of Defendants' agreement and is likely to reveal even more troubling facts concerning the anticompetitive aims of Cliffs' and the USW leadership's illegal alliance; their performance of the agreement; their dealings with government officials and regulators concerning the Merger; their efforts to kill the Merger; and Cliffs' overall "merge or murder" strategy of either acquiring U. S. Steel or leaving it in a hobbled state. Moreover, targeted discovery is necessary to prove the anticompetitive effects of Defendants' conduct and the injury they have caused to American consumers and communities. Given the fact issues at play, Plaintiffs are entitled to an evidentiary hearing pursuant to Rule 65, and would be prejudiced if they cannot present their motion on a reasonably comprehensive, albeit preliminary, evidentiary record.

Meanwhile, time is of the essence, as there are only months remaining before the outside termination date of the merger agreement expires in June, risking forever the competitive benefits

that would result from the Merger.[3]  And even if the Merger permanently falls through, U. S. Steel would still require urgent relief to prevent Defendants from undermining U. S. Steel's ability to effectively compete in several key iron and steel markets on its own or through the pursuit of strategic alternatives—alternatives which U. S. Steel will be required to immediately turn to without the NSC Merger.

Accordingly, Plaintiffs seek expedited discovery in aid of their preliminary injunction motion; a briefing schedule to follow the discovery period; and an evidentiary hearing to be conducted on or about April 21, 2025 or as soon thereafter as is practicable for the Court.

## ARGUMENT

"The prevailing approach in the Third Circuit is to apply the good cause or reasonableness standard" when deciding a motion to expedite proceedings, including to expedite discovery. *Flatiron Crane Operating Co. v. Adkins,* 2023 WL 4565470, at *3 (E.D. Pa. July 17, 2023).[4] Under this standard, courts consider "whether the plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant."  *Samuel, Son & Co. v. Beach*, 2013 WL 4855325, at *5 (W.D. Pa. Sept. 11, 2013). These factors compel expedition here.

## I.    Plaintiffs Have Good Cause to Seek Expedited Discovery in Aid of Their Motion for a Preliminary Injunction.

Expedited discovery is particularly appropriate where, as here, a plaintiff seeks injunctive relief and the requested discovery "can help to ensure a clear and focused factual record for the

---

[3] Those competitive benefits include NSC's pledged investment of at least $2.7 billion in USW-represented U. S. Steel blast furnace facilities; NSC's infusion of technology allowing NSC and U. S. Steel to compete in relevant markets; and lower prices, increased product choice, higher output, and increased innovation for all customers.

[4] All internal citations and quotations are omitted unless otherwise noted.

[preliminary injunction] hearing." *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 2021 WL 1740582, at *2 (M.D. Pa. May 3, 2021); *see also Sawhorse Enters., Inc. v. Church & Dwight Co., Inc.*, 2013 WL 1343608, at *4 (D.N.J. Apr. 3, 2013) ("If narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted."); *Exclusive Supplements, Inc. v. Abdelgawad*, 2013 WL 160275, at *1 (W.D. Pa. Jan. 15, 2013) (noting that "this case would benefit from conducting some discovery prior to the preliminary injunction hearing" because of the parties' "divergent factual assertions").

Plaintiffs have good cause to seek expedited discovery here. To establish entitlement to a preliminary injunction, the movant must show, as relevant here, "a reasonable probability of eventual success in the litigation." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). Here, for purposes of preliminary injunctive relief, the claims at issue are that the unlawful agreement between Cliffs and the USW violates the Sherman Act both as an anticompetitive agreement (Section 1) and as a conspiracy to monopolize (Section 2). This conduct is also at the heart of Defendants' tortious interference with the Merger. Thus, the matters on which Plaintiffs seek expedited discovery are only those necessary for the preliminary injunction hearing—a much narrower universe than what the Complaint alleges, which includes other Sherman Act claims as well as RICO claims. (Compl., Counts Two, Three, and Five through Seven.) *See Kone Corp. v. ThyssenKrup USA, Inc.*, 2011 WL 4478477, at *7 (D. Del. Sept. 26, 2011) (granting expedited discovery for "categories of documents" that "address[ed] the key disputed factual issue relevant to the P.I. motion").

While it is true that Cliffs and the USW's leadership have previously paraded their collaboration—making this the rare antitrust case in which the plaintiffs possess direct evidence of a conspiracy at the outset—a full picture of the agreement, its anticompetitive aims, its efforts

to kill the Merger, and Defendants' future plans, including to continue to try to force U. S. Steel to acquiesce to a merger with Cliffs, remain concealed. Moreover, facing liability for their conduct, Defendants are likely to distance themselves from their statements and deny an ongoing agreement—indeed, immediately after President Biden issued the Executive Order blocking the merger, McCall, clearly coached, pretended at a press conference that he had no particular interest in an acquisition by Cliffs. Against this backdrop, targeted discovery is all the more critical. Defendants' public statements are surely just the tip of the iceberg and the development of the factual record will aid this Court in the efficient adjudication of the preliminary injunction motion. *See, e.g.*, *Croft v. Donegal Twp.*, 2020 WL 6803051, at *3 (W.D. Pa. Nov. 19, 2020) (granting expedited discovery "to sufficiently develop a record in advance of the preliminary injunction hearing"). Specifically, Plaintiffs are entitled to at least the following categories of document discovery:

(1) <u>Communications between and among representatives of the co-conspirators (including Defendants Goncalves and McCall) concerning the unlawful agreement, Cliffs' goal to acquire U. S. Steel, and the Merger.</u> Such communications are relevant to, among other things, the performance and objectives of the unlawful agreement, and the manner in which it furthers Cliffs' "merge or murder" strategy to acquire or wound U. S. Steel, including if the Merger remains blocked.

(2) <u>Communications between and among Cliffs, the USW, and government officials and representatives concerning the Merger.</u> Such communications are relevant to the degree of coordination between Cliffs and the USW in effectuating their unlawful agreement. They will also reflect the lies that Cliffs and the USW peddled in attempting to turn the government against the Merger, which is relevant to both the substantive

conspiracy and the "sham" exception to any legal immunity Defendants might claim to have under the First Amendment.

(3) Communications between Cliffs/USW and Plaintiffs' investors concerning the Merger. Such communications will further demonstrate the degree of coordination between Cliffs and the USW in their campaign to tank the Merger, as well as their efforts to amplify to the market their "de-facto veto power" over an acquisition of U. S. Steel by anyone other than Cliffs.

In light of what the limited public record has shown to date—and that another federal court has already found Cliffs to be a monopolist—Plaintiffs are virtually certain to uncover "critical factual evidence" that will bolster their likelihood of success on the merits through each of these categories of inquiry. *See Samuel, Son & Co.*, 2013 WL 4855325, at *4 (finding good cause for expedited discovery of "critical factual evidence" related to plaintiff's preliminary injunction motion); *see also Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998) (expedited discovery is "particularly appropriate" when the requested materials would "better enable the court to judge the parties' interests and respective chances for success on the merits"). Nor is there any risk of a proverbial "fishing expedition," given what is already a matter of public record and the highly specific subject matter, time frame, and individuals involved. *See Kone Corp.*, 2011 WL 4478477 at *7 (granting motion to expedite where plaintiffs were "seeking discovery that directly relates to products and methods accused of patent infringement, in a suit between sophisticated corporate parties").[5]

---

[5] Plaintiffs also intend to take appropriate, targeted discovery of third parties, including, for example, customers of U. S. Steel and Cliffs, and investors in U. S. Steel and NSC.

Last, expedited discovery should include expert discovery on the economic issues presented, as well as whatever fact discovery is necessary for experts to be able to develop and offer their opinions. Expert discovery and testimony will aid the Court in determining the geographic and product markets relevant to assessing Cliffs' anticompetitive campaign, as well as the degree and manner in which that campaign has lessened or will lessen competition in those markets (to the extent it is not deemed "manifestly anticompetitive" and thus a *per se* violation of Section 1). Such expert discovery will assist the Court by clarifying the economic issues inherent in any antitrust case. *See Epsilon Energy USA, Inc.*, 2021 WL 1740582 at *2.

## II.    Plaintiffs Have Good Cause to Seek an Expedited Preliminary Injunction Hearing.

Plaintiffs are also entitled to an expedited preliminary injunction hearing. *See Anderson v. Davila*, 125 F.3d 148, 156–57 (3d Cir. 1997) (district court may hold an expedited preliminary injunction hearing "when circumstances warrant an expedited hearing" and expedition does not deprive defendants of a "fair opportunity" to prepare for the same).

For Plaintiffs to secure meaningful relief, it is critical for a preliminary injunction hearing to be held by late April. Plaintiffs are challenging the Executive Order on an expedited basis and expect a decision no later than May. However, even if Plaintiffs' petition for review is granted, that will only result in a remand to CFIUS for further process. Under such circumstances, Plaintiffs should be entitled to pursue closing of the Merger without the interference caused by Defendants' unlawful agreement, which is ongoing and will most certainly continue absent an injunction. *See, e.g., Ride the Ducks of Phila., LLC v. Duck Boat Tours, Inc.*, 2005 WL 1583514, at *2 (3d Cir. July 6, 2005) (affirming the issuance of a preliminary injunction on the basis of a tortious interference claim "because the purpose of a preliminary injunction is to prevent the occurrence of injuries"); *Wash. Trotting Ass'n, Inc. v. Penn. Harness Horsemen's Ass'n*, 428 F. Supp. 122, 126–27 (W.D. Pa. 1977) (issuing a preliminary injunction on the basis of a Sherman Act Section 1

claim).  Alternatively, if the Executive Order stands and the Merger is permanently blocked, U. S. Steel will need to quickly evaluate strategic alternatives and should be entitled to do so without Defendants continuing to exercise their purported "de-facto veto power" over a transaction with anyone other than Cliffs.

As Plaintiffs will show at the hearing, Cliffs' "merge or murder" strategy—enabled by the unlawful agreement with the USW—is causing substantial and irreparable harm with each passing day, depriving U. S. Steel of the technological and financial resources it requires to best compete in several key markets and threatening dire impacts on U. S. Steel's workforce and the communities in which it operates.  U. S. Steel does not have the luxury of litigating these complex claims for years with an anticompetitive sword hanging over its head; Cliffs is actively trying to acquire or destroy it.  Nor does NSC have that luxury; it is unlikely that NSC will have another opportunity to expand its U.S. business operations in a similarly transformative way.  Rather, injunctive relief, and expedited proceedings in aid of such relief, are urgently needed to enable Plaintiffs to compete effectively in steel markets critical to American consumers and the American economy while Plaintiffs pursue the ultimate adjudication of their claims.

## III.    **Plaintiffs' Proposed Schedule for Expedited Proceedings**

In light of Plaintiffs' entitlement to expedited proceedings in aid of their preliminary injunction motion, Plaintiffs propose the following timetable for such proceedings:

| | |
|---|---|
| January 10, 2025: | Initial status conference and opening of fact discovery |
| January 13, 2025: | Deadline for initial requests for production of documents |
| January 17, 2025: | Deadline for service of third-party subpoenas and for service of responses and objections to initial requests for production of documents |
| February 13, 2025: | Deadline for substantial completion of document discovery |
| March 4, 2025: | Completion of fact depositions |

| | |
|---|---|
| March 7, 2025: | Service of opening expert reports |
| March 17, 2025: | Service of rebuttal expert reports |
| March 20, 2025: | Service of reply expert reports |
| March 27, 2025: | Completion of expert discovery |
| March 31, 2025: | Movants' memorandum of law in support of motion for preliminary injunction |
| April 10, 2025: | Defendants' memorandum of law in opposition to motion for preliminary injunction |
| April 17, 2025: | Movants' reply memorandum of law in further support of motion for preliminary injunction |
| April 21-25, 2025: | Evidentiary hearing on motion for preliminary injunction |

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (i) granting Plaintiffs expedited discovery on the proposed timetable set forth above, and (ii) setting an evidentiary hearing on Plaintiffs' preliminary injunction motion to commence on or about April 21, 2025, or as soon thereafter as is practicable for the Court.

January 6, 2025

Respectfully submitted,

OF COUNSEL:

Grant R. Mainland (NY 4628319)
James H. Weingarten (DC 985070)
(*pro hac vice* forthcoming)
MILBANK LLP
55 Hudson Yards
New York, NY  10001
Phone:  (212) 530-5000
Fax:  (212) 530-5219
gmainland@milbank.com
jweingarten@milbank.com

Jonathan M. Moses (NY 2836054)
Adam L. Goodman (NY 5207816)
(*pro hac vice* forthcoming)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
Phone:  (212) 403-1000
Fax:  (212) 403-2000
jmmoses@wlrk.com
algoodman@wlrk.com

*/s/ Thomas E. Birsic*
Thomas E. Birsic (PA 31092)
Eric R.I. Cottle (PA 78152)
Wesley A. Prichard (PA 324411)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222
Phone:  (412) 355-6538
Fax:  (412) 355-6501
thomas.birsic@klgates.com
eric.cottle@klgates.com
wesley.prichard@klgates.com

*Attorneys for Plaintiff United States Steel Corporation*

OF COUNSEL:

David B. Hennes (NY 2773190)
Alexander B. Simkin (NY 4463691)
Andrew S. Todres (NY 5347521)
Stefan P. Schropp (DC 1026864)
(*pro hac vice forthcoming*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY  10036
(212) 596-9000
David.Hennes@ropesgray.com
Alexander.Simkin@ropesgray.com
Andrew.Todres@ropesgray.com
Stefan.Schropp@ropesgray.com

*/s/ Daniel I. Booker*
Daniel I. Booker (PA 10319)
Christopher R. Brennan (PA 313534)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Phone:  (412) 288-3131
Fax:  (412) 288-3063
DBooker@reedsmith.com
CBrennan@reedsmith.com

*Attorneys for Plaintiffs Nippon Steel Corporation and Nippon Steel North America, Inc.*