IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES STEEL CORPORATION, NIPPON STEEL CORPORATION, and NIPPON STEEL NORTH AMERICA, INC.<br><br>    Plaintiffs,<br><br>v.<br><br>CLEVELAND- CLIFFS INC., LOURENCO GONCALVES, AND DAVID MCCALL<br><br>    Defendants. | Civil Action No. 2:25-cv-15<br><br>Hon. Marilyn J. Horan |

# **DEFENDANT DAVID MCCALL'S OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED PROCEEDINGS**

Micheal Healey (Penn. Bar No. 27283)
HEALEY BLOCK LLC
PO Box 81918
Pittsburgh, PA 15217
(412) 760-0342
mike@unionlawyers.net


David R. Jury (Penn. Bar No. 77015)
Nathan L. Kilbert (Penn. Bar No. 313939)
Anthony Resnick (Penn. Bar No. 319682)
UNITED STEELWORKERS
INTERNATIONAL
60 Boulevard of the Allies, Room 807
Five Gateway Center
Pittsburgh, PA 15222
(412) 562-2545
djury@usw.org
nkilbert@usw.org
aresnick@usw.org

Bruce Lerner*
Leon Dayan*
Joshua Shiffrin*
Derrick C. Rice*
Rachel Casper*
BREDHOFF & KAISER, P.L.L.C.
805 15th Street NW
Suite 1000
Washington, DC 20005
(202) 842-2600
blerner@bredhoff.com
ldayan@bredhoff.com
jshiffrin@bredhoff.com
drice@bredhoff.com
rcasper@bredhoff.com

*Admission Pro Hac Vice pending


*Counsel to Defendant David McCall*

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*4SIGHT Supply Chain Grp., LLC v. Kent*,
  2019 WL 13235533 (D.N.J. 2019) ...................................................................................6

*Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt., Ltd.*,
  2010 WL 11566472 (W.D. Pa. 2010) ................................................................................6

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972) ..........................................................................................................3

*City of Columbia v. Omni Outdoor Advert., Inc.*,
  499 U.S. 365 (1991) ..........................................................................................................9

*Croft v. Donegal Twp.*,
  2020 WL 6803051 (W.D. Pa. 2020) ...............................................................................5, 6

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) .............................................................................................9

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ..........................................................................................................9

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*,
  2021 WL 1740582 (M.D. Pa. 2021) ..........................................................................4, 5, 6

*Exclusive Supplements, Inc. v. Abdelgawad*,
  2013 WL 160275 (W.D. Pa. 2013) ....................................................................................5

*Graziano v. Pa. Dep't of Corr.*,
  2022 WL 17252572 (W.D. Pa. 2022) ................................................................................4

*Issa v. Sch. Dist. of Lancaster*,
  847 F.3d 121 (3d Cir. 2017) ............................................................................................10

*Kone Corp. v. ThyssenKrupp USA, Inc.*,
  2011 WL 4478477 (D. Del. 2011) .................................................................................5, 7

*In re Merck Mumps Vaccine Antitrust Litig.*,
  2024 WL 4432076 (3d Cir. 2024) .....................................................................................9

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ...........................................................................................9

*Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*,
  1998 WL 404820 (E.D. Pa. 1998) .....................................................................................5

*Samuel, Son & Co. v. Beach*,
   2013 WL 4855325 (W.D. Pa. 2013) ......................................................................................4, 5

*Sierra Club v. U.S. Dep't of Energy*,
   825 F.Supp.2d 142 (D.D.C. 2011) ..........................................................................................10

*U.S. Steel Corp. v. CFIUS*,
   No. 25-1004 (D.C. Cir. Jan. 6, 2025) ........................................................................................3

**Statutes**

50 U.S.C. § 4565 ................................................................................................................................2

**Other Authorities**

31 C.F.R. 800.801(a) ........................................................................................................................2

Order Regarding the Proposed Acquisition of United States Steel Corporation by
   Nippon Steel Corporation, 90 Fed. Reg. 2605 (Jan. 3, 2025) ................................................2, 3

Plaintiffs Nippon Steel Corporation and Nippon Steel North America (together, "Nippon" or "Nippon Steel") and United States Steel Corporation ("U.S. Steel") ask this Court to do something extraordinary: allow plaintiffs who have merely filed a bare request for a preliminary injunction—unaccompanied by any brief, any affidavit, or even any specification of the conduct sought to be enjoined—to force their adversaries into early, costly, and intrusive deposition and document discovery. That is not only extraordinary, it is unprecedented. It is inconsistent with the uniform body of case law in this District, including with every case Plaintiffs themselves cite.

What is required in this District to obtain early discovery is for the plaintiff first to come forward with its preliminary injunction brief and its supporting admissible evidence and then, only after the defendant files responsive opposition papers, for the Court to consider whether and to what extent discovery might aid the Court in resolving the injunction request. That orderly procedure is eminently sound, as it guards against abuses of the Federal Rules' discovery processes while ensuring fairness to parties who genuinely can demonstrate the need for early discovery in aid of a preliminary injunction.

This case exemplifies the sort of abuse that this Court's procedures are designed to prevent. Here, the lead defendant is Plaintiffs' U.S. competitor, Cleveland Cliffs (or "Cliffs"). The other two defendants are that competitor's CEO, Lourenco Goncalves, and the president of the union that represents Plaintiff U.S. Steel's employees, David McCall.[1] Plaintiffs, based on nothing more than unsupported allegations, are peremptorily demanding that these Defendants open up their files and turn over sensitive communications so that the Plaintiffs may fish for a basis on which to enjoin Defendants—all without even declaring in advance what conduct they

---

[1] The union is the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW" or "Steelworkers Union").

1

actually want enjoined.

That basic sketch of the alignment of the parties should be enough to raise concerns about the potential for abuse inherent in Plaintiffs' requested procedure. But we briefly provide additional factual context before turning to the legal argument.

In December 2023, Plaintiffs Nippon and U.S. Steel announced a plan to merge. Within days and weeks of the announcement, politicians from both political parties stated their opposition to the merger.[2]

The USW, which represents employees at both U.S. Steel and Cliffs, was among the groups opposed to the merger. By statute, the merger was subject to approval by the U.S. President following the receipt of a recommendation or referral from the Committee on Foreign Investment in the United States ("CFIUS"). 50 U.S.C. § 4565. Unsurprisingly, parties in favor and opposed to the deal—including Plaintiffs and Defendants—petitioned the relevant decisionmakers. Indeed, federal regulations contemplate that persons who are not parties to the transaction will submit information to CFIUS for consideration. *See* 31 C.F.R. 800.801(a).

On Friday, January 3, 2025, following CFIUS review, President Biden issued an order barring the merger. *See* Decl. of Joshua Shiffrin Ex. 1 (Order Regarding the Proposed Acquisition of United States Steel Corporation by Nippon Steel Corporation, 90 Fed. Reg. 2605 (Jan. 3, 2025)). The President's order cited "credible evidence" that the proposed merger

---

[2] *See, e.g.*, Decl. of Joshua Shiffrin Ex. 2 (Lauren Sforza, *Trump says he would block US Steel sale*, The Hill (Feb. 1, 2024)) (February 1, 2024 report that then-candidate Donald Trump said, "I would block [the merger] instantaneously. Absolutely."); Decl. of Joshua Shiffrin Ex. 3 (Tobias Burns, *Lawmakers push to stop 'fundamentally troubling' sale of US Steel*, The Hill (Dec. 19, 2023)) (December 19, 2023 article collecting statements from senators from both parties in opposition to the merger).

2

"threatens to impair the national security of the United States" as the basis for his decision to block the merger. *Id.*

Plaintiffs were naturally disappointed by the decision to block the merger. To that end, on Monday, January 6, 2024, they filed a petition for appellate review in the D.C. Circuit challenging the President's Order. *See U.S. Steel Corp. v. CFIUS*, No. 25-1004 (D.C. Cir. Jan. 6, 2025). That action is directed against the government officials who were responsible for issuing and enforcing the Order. Whatever its substantive merit, that appeal is an exercise of the Plaintiffs' First Amendment right to petition the government to achieve a desired outcome. *See generally Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972).

But Plaintiffs did not rest there. That same day, Plaintiffs filed this lawsuit, invoking a litany of federal antitrust, RICO, and tort law theories and requesting injunctive relief and treble and punitive damages in a transparent effort to silence and retaliate against private actors who have done nothing more than exercise their own First Amendment right to petition CFIUS and other branches of the government. *Id.* at 510 ("Certainly the right to petition extends to all departments of the Government.").

Though Plaintiffs have failed to specify the precise activity they seek to enjoin,[3] the requested injunction would appear, from Plaintiffs' incomplete motion, to bar Mr. McCall, and indeed, the whole of USW, from engaging in political speech and petitioning activities so that these key opponents of the merger (with direct stake in its outcome) will be silenced in the event that the D.C. Circuit enjoins the current Presidential order blocking it. In other words, the Plaintiffs are employing a pincer strategy to revive the merger, utilizing their own First

---

[3] During the meet-and-confer process in connection with this Motion, counsel for the Plaintiffs refused to enumerate the specific conduct by Defendants that Plaintiffs sought to enjoin.

3

Amendment rights to ask the D.C. Circuit to order the governmental officials responsible for blocking the merger to reconsider while asking this Court to order certain leading critics of the merger to be silent in violation of their First Amendment rights so that those government officials will not hear from them anymore.

## ARGUMENT

### I. Plaintiffs Have Not Demonstrated Good Cause for Expedited Discovery

A party seeking expedited discovery must "show 'good' cause for its motion, such that the request is 'reasonable' in light of the circumstances." *Samuel, Son & Co. v. Beach*, 2013 WL 4855325, at *3 (W.D. Pa. 2013) (internal citations omitted); *see also Graziano v. Pa. Dep't of Corr.*, 2022 WL 17252572, at *1 (W.D. Pa. 2022). Under this standard, the Court must "consider whether the plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant." *Samuel, Son & Co.*, 2013 WL 4855325, at *3 (internal quotation marks omitted).

Plaintiffs assert that expedited discovery is warranted solely because they are seeking a preliminary injunction. *See* Mot. Expedited Proceedings 9–10. But seeking a preliminary injunction "is not by itself dispositive and is simply one factor to consider as part of the good cause analysis." *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 2021 WL 1740582, at *2 (M.D. Pa. 2021). Indeed, Plaintiffs fail to point to any case in which a preliminary injunction constituted good cause warranting discovery *before full briefing on the preliminary injunction motion itself*. Nor has our research uncovered any such cases.

In the normal course, a party seeking expedited discovery in support of a preliminary injunction must first file a *complete* motion for that injunction—including a memorandum of law, supporting affidavits, and a proposed preliminary injunction order—and allow an

4

opportunity for the opposing party to respond. *See, e.g.*, *Samuel, Son & Co.*, 2013 WL 4855325, at *4 (granting a motion for expedited discovery after "contested issues of fact [were] highlighted in the parties' filings"); *Exclusive Supplements, Inc. v. Abdelgawad*, 2013 WL 160275, at *1 (W.D. Pa. 2013) (granting a motion for expedited discovery "[g]iven the wildly divergent factual assertions made by the parties in their filings"). Once the preliminary injunction motion is briefed by both sides, this Court then determines if there is good cause for expedited discovery in advance of a preliminary injunction hearing. Indeed, in every case that Plaintiffs themselves cite regarding a motion to expedite discovery in connection with a motion for a preliminary injunction, the court ruled on that motion only *after* the preliminary injunction was briefed by both parties. *See Epsilon Energy USA*, 2021 WL 1740582; *Abdelgawad*, 2013 WL 160275; *Samuel, Son & Co.*, 2013 WL 4855325; *Kone Corp. v. ThyssenKrupp USA, Inc.*, 2011 WL 4478477 (D. Del. 2011); *Phila. Newspapers, Inc. v. Gannett Satellite Info. Network, Inc.*, 1998 WL 404820 (E.D. Pa. 1998); *Croft v. Donegal Twp.*, 2020 WL 6803051 (W.D. Pa. 2020).[4] Stated otherwise, Plaintiffs' own cases support the conventional understanding that good cause for expedited discovery can only be analyzed, at minimum, after a preliminary injunction motion has been briefed in full.

This conventional approach makes sense. It gives the parties the opportunity to determine whether, in anticipation of the preliminary injunction hearing, any facts actually material to the preliminary injunction request are in dispute. If there are, parties can identify and tailor any necessary discovery to those material, disputed facts. *See Samuel, Son & Co.*, 2013 WL 4855325, at *4 ("Where critical factual evidence is in dispute, as here, a period of narrow,

---

[4] In *Croft*, the plaintiffs filed full preliminary injunction briefing—including a memorandum of law, affidavits, and a proposed order—and defendants filed a motion to dismiss prior to the court's analysis of the motion for expedited discovery.

5

targeted discovery in advance of a preliminary injunction hearing can help to 'crystallize the issues for the preliminary injunction hearing' and 'ensure a clear and focused factual record.'" (quoting *Kone Corp.*, 2011 WL 4478477, at *1)). Alternatively, if parties' briefing reveals that the dispute is essentially over questions of law or over factual matters that do not require substantial discovery, the Court is positioned to avoid or reduce the costs and burdens on both the parties and the Court of unnecessary discovery.

 Further, to demonstrate good cause for expedited discovery in connection with a preliminary injunction, a party must avoid overbroad requests and show that the discovery sought is narrowly tailored to the issues relevant to the preliminary injunction hearing. *See 4SIGHT Supply Chain Grp., LLC v. Kent*, 2019 WL 13235533, at *2 (D.N.J. 2019); *see also Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt., Ltd.*, 2010 WL 11566472, at *2 (W.D. Pa. 2010); *Epsilon Energy USA*, 2021 WL 1740582, at *3; *Croft*, 2020 WL 6803051, at *3. A court is in no position to evaluate overbreadth and narrow tailoring where, as here, the party seeking injunctive relief has submitted no brief in support of the injunction, no proposed order, and no evidence and yet nevertheless seeks sweepingly expansive discovery. *See* Mot. Expedited Proceedings 11–12 (seeking broad discovery from third parties and experts on top of party discovery).

 Plaintiffs have thus put the cart before the horse. The Court should require Plaintiffs to file a fully supported preliminary injunction motion—including a brief, declarations, and proposed order—as well as hear from the Defendants in response to that motion, before entertaining any request for expedited discovery. If Plaintiffs do not have a basis to seek the

6

extraordinary remedy of preliminary injunctive relief, they should not be permitted to go fishing in Defendants' files in an attempt to find one.[5]

## II. There Are No Exigent Circumstances That Justify Discovery Before, at a Minimum, Full Briefing of a Preliminary Injunction Motion

Plaintiffs have also failed to demonstrate good cause because they have not identified any bona fide exigent circumstances that justify expedited discovery at this juncture. Plaintiffs argue that "time is of the essence" because "there are only months remaining before the outside termination date of the merger agreement expires in June." Mot. Expedited Proceedings 8. However, the merger expiration date is a matter of contract completely within the Plaintiffs' control, and it can be extended by mutual agreement of the parties to that contract.[6]

In reality, an extension of the merger agreement would be necessary for reasons outside of this litigation because it is highly unlikely that the merger can close by June 18, 2025. The D.C. Circuit appeal is not expected to be fully briefed and heard until April. Even if the D.C. Circuit were to rule against the government before June, the merger would merely go back to CFIUS at that point for further consideration.

In any event, the termination date in the merger agreement is of little relevance to the case before the Court. Plaintiffs' papers repeatedly imply that relief in this case will save their merger. See Compl. ¶¶ 2, 14–16, 23, 54–56, 163, 166 (describing anticipated benefits should the

---

[5] The timing and circumstances of Plaintiffs' request for expedited discovery suggest that their real motivation is to conduct discovery in aid of their D.C. Circuit appeal. Of course, it would be an abuse of this Court's processes to conduct discovery for that purpose. Cf. Kone Corp., 2011 WL 4478477, at *5 (discussing how "ulterior motive[s]" for an expedited discovery motion—or the litigation as a whole—weigh against granting expedited discovery).

[6] Under Section 9.1 of the December 18, 2023 Agreement and Plan of Merger, the terms of the agreement, including the termination date, can be amended by mutual agreement. See Decl. of Joshua Shiffrin Ex. 4 (Agreement and Plan of Merger (Dec. 18, 2023)). Further, under Section 8.1 of the agreement, termination is not automatic; June 18, 2025 is merely the date after which either parties could choose to elect to terminate the merger agreement.

"pending" merger succeed); *see also* Mot. Expedited Proceedings 7 (stating that "U.S. Steel will be deprived of the capital and technology that the Merger would provide," "[i]f Defendants' illegal agreement is not enjoined"). But that is erroneous: a preliminary injunction in this case could not order the merger to proceed or lift the ban against it. It could only silence certain critics of the merger; and, as noted above, there are many powerful non-defendant critics of that merger, including the soon-to-be-inaugurated President, Donald Trump. *See supra* note 2. Thus, the timing surrounding Plaintiffs' attempts to resurrect their merger does not justify Plaintiffs' request for unprecedented expedited discovery in this case.

### III.   Injunctive Relief is Likely Improper Regardless of the Facts Sought in Discovery

Making Plaintiffs' bid for expedited discovery even more indefensible is that no preliminary injunction could possibly be warranted, even taking the facts alleged in the Complaint as true.

Plaintiffs have indicated that they intend to seek preliminary injunctive relief as to their claims under Sections 1 and 2 of the Sherman Act (Counts 1 and 4), as well as their tortious interference claims (Counts 8 and 9). As to Mr. McCall, those claims appear premised on the allegations that Mr. McCall entered into an illegal agreement with the other Defendants to obstruct any other entity from purchasing U.S. Steel other than Cliffs, *see, e.g.*, Compl. ¶¶ 2, 9, 18, 27, 51, and that, in furtherance of that agreement, Mr. McCall, among other things, engaged in public advocacy and petitioning directed toward CFIUS and officials in the Presidential administration who comprise CFIUS, *see, e.g.*, *id.* ¶¶ 21, 22.

It has long been established under the *Noerr-Pennington* doctrine that there can be no antitrust liability for advocacy and petitioning aimed at influencing government actors. That is so even where, as alleged here, the petitioning is done in concert with others for anticompetitive

8

reasons. *See City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 379–80 (1991) (Antitrust laws "do not regulate the conduct of private individuals in seeking anticompetitive action from the government"); *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 142–43 (1961); *In re Merck Mumps Vaccine Antitrust Litig.*, 2024 WL 4432076, at *1, 4–6 (3d Cir. 2024) (Congress did not intend to proscribe harm to competition that "is the result of valid government action, as opposed to private action"). As we expect to argue at an appropriate juncture in this case, the facts alleged in the Complaint do not state a claim for injunctive relief considering this doctrine.

Further, as best we can tell, Plaintiffs appear to seek an injunction that would limit what Mr. McCall could communicate to either the public or public officials about his or the USW's views on potential change of control transactions involving U.S. Steel, an employer for which USW serves as the certified exclusive representative of thousands of employees. An injunction seeking to enjoin Mr. McCall's ability to speak publicly or to government officials about the merger—*i.e.*, his ability to engage in political speech about U.S. Steel and potential change of control transactions—would amount to impermissible prior restraint on Mr. McCall's speech under the First Amendment. There is a "'heavy presumption' against prior restraints on speech." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 204 (3d Cir. 2024) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)). It would thus exacerbate the unfairness inherent in ordering discovery based only on bare allegations, *see supra* Part I, to order it in a case with serious First Amendment implications. *Cf. Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("The costs and efforts" imposed by the discovery process "could chill free speech nearly as effectively as the absence of the actual malice standard.").

Even if Plaintiffs could overcome these obstacles to the injunctive relief they seek, their motion indicates they will be unable to meet other prerequisites for the "extraordinary remedy" of a preliminary injunctive, regardless of the expedited discovery they seek. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). In their attempt to establish irreparable harm, Plaintiffs point only to harm they assert will occur if the merger does not succeed. *See, e.g.*, Mot. Expedited Proceedings 6–7 ("If Defendants' illegal agreement is not enjoined, U.S. Steel will be deprived of the capital and technology that the Merger would provide."). However, as we discuss above, a preliminary injunction in this case cannot resurrect Plaintiffs' blocked merger. Harm that a preliminary injunction would not redress cannot be the predicate irreparable harm that justifies that preliminary injunction. *Cf. Sierra Club v. U.S. Dep't of Energy*, 825 F.Supp.2d 142, 150 (D.D.C. 2011) ("The Sierra Club has not met its burden of showing that the harm to its members would be redressed by the injunction it seeks.").

## CONCLUSION

For the foregoing reasons, Defendant David McCall respectfully requests that the Court deny Plaintiffs' Motion for Expedited Proceedings.

| | |
|---|---|
| January 14, 2025 | Respectfully submitted, |
| | |
| /s/ Michael Healey | Bruce Lerner* |
| Micheal Healey (Penn. Bar No. 27283) | Leon Dayan* |
| HEALEY BLOCK LLC | Joshua Shiffrin* |
| PO Box 81918 | Derrick C. Rice* |
| Pittsburgh, PA 15217 | Rachel Casper* |
| (412) 760-0342 | BREDHOFF & KAISER, P.L.L.C. |
| mike@unionlawyers.net | 805 15th Street NW |
| | Suite 1000 |
| David R. Jury (Penn. Bar No. 77015) | Washington, D.C. 20005 |
| Nathan L. Kilbert (Penn. Bar No. 313939) | (202) 842-2600 |
| Anthony Resnick (Penn. Bar No. 319682) | blerner@bredhoff.com |
| UNITED STEELWORKERS | ldayan@bredhoff.com |
| INTERNATIONAL | jshiffrin@bredhoff.com |
| 60 Boulevard of the Allies, Room 807 | drice@bredhoff.com |
| Five Gateway Center | rcasper@bredhoff.com |
| Pittsburgh, PA 15222 | |
| (412) 562-2545 | *Admission Pro Hac Vice pending |
| djury@usw.org | |
| nkilbert@usw.org | |
| aresnick@usw.org | Counsel to Defendant David McCall |