# **Exhibit 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------- X
UNITED STATES STEEL CORPORATION, :
NIPPON STEEL CORPORATION, and NIPPON :
STEEL NORTH AMERICA, INC., :
                                                :    Civil Action No.: 2:25-cv-15
                         Plaintiffs, :
                                                :    **JURY TRIAL DEMANDED**
               vs. :
CLEVELAND-CLIFFS INC., LOURENCO :
GONCALVES, and DAVID McCALL, :
                          Defendants. :
---------------------------------------------------------------- X

**PLAINTIFFS' REPLY IN SUPPORT OF EXPEDITED PROCEEDINGS**

Thomas E. Birsic
K&L GATES LLP
210 Sixth Avenue
Pittsburgh, PA  15222

Grant R. Mainland
MILBANK LLP
55 Hudson Yards
New York, NY  10001

Jonathan M. Moses
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019

*Attorneys for Plaintiff United States Steel Corporation*

Daniel I. Booker
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222

David B. Hennes
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY  10036

*Attorneys for Plaintiffs Nippon Steel Corporation and Nippon Steel North America, Inc.*

(*Additional counsel listed on signature page*)

**PRELIMINARY STATEMENT**

Nothing in Defendants' Oppositions ("Opp.," ECF Nos. 50, 51) undermines Plaintiffs' showing that there is good cause to set an expedited schedule for an evidentiary hearing in connection with Defendants' ongoing scheme to interfere with Plaintiffs' pending Merger and to damage Plaintiffs. The Oppositions mischaracterize Plaintiffs' goal as seeking to enjoin Defendants' political speech—not so. Plaintiffs seek to (i) end Defendants' improper conduct in furtherance of an illegal agreement between Cliffs, U. S. Steel's chief competitor, and the leadership of the USW, aimed at forcing U. S. Steel to merge with Cliffs to secure its monopoly power, and (ii) stop Defendants' relentless campaign to interfere with the Merger. Nothing in the First Amendment protects such an agreement or such interference.

Events this week confirm the need for expedited proceedings. Defendant Lourenco Goncalves, Cliffs' CEO, once again showed that he will stop at nothing to interfere in the Merger and force U. S. Steel into his arms. In a race-baiting press conference, Goncalves announced his plan for a renewed U. S. Steel bid. He said he had an "all-American solution" in place, "[t]he fight's not over," and he will "continue to fight."[1] Goncalves explained his motivation: "Japan is evil," has not "learn[ed] anything since 1945," and must "stop sucking our blood." Speaking directly to NSC, Goncalves again suggested *seppuku* (ritual suicide). Goncalves confirmed Cliffs' monopolistic aims: "People remember the traditional names of steel companies. . . . [Now,] they are all inside Cleveland-Cliffs." And he underscored his resolve: asked what Cliffs would do if it acquires U. S. Steel, Goncalves corrected the questioner: "Not if, *when*." *Id.* at 16:4144, 1:19:49.

---

[1] Cleveland-Cliffs, Inc., *Cleveland-Cliffs Butler Press Conference*, YouTube, at 1:38:01, 1:45:51 (Jan. 13, 2025), https://www.youtube.com/watch?v=nDmOdTbTVGg. *See also* Editorial, *Off the Cliffs: Bizarre CEO rant shows why Trump should reverse Biden's Nippon block*, Pittsburgh Post-Gazette (Jan. 16, 2025), https://www.post-gazette.com/opinion/editorials/2025/01/16/cleveland-cliffs-nippon-steel-trump-biden-goncalves/stories/202501160029.

Moreover, CFIUS this week promptly granted Plaintiffs' request to extend the deadline to abandon the Merger until June 18, 2025, and the D.C. Circuit immediately ordered expedition in Plaintiffs' related litigation challenging the Executive Order to ensure a decision in advance of the Merger's outside date. *See United States Steel Corp.* v. *CFIUS*, No. 25-1004 (D.C. Cir. Jan. 13, 2025). Both decisions underscore why expedition is not only warranted but critical here.

Defendants also ignore the harm that not only Plaintiffs, but the thousands of steelworkers and their communities will suffer if the Merger is blocked. It is no exaggeration that the future of steelmaking in the Mon Valley and other communities hangs in the balance. The shuttering of mills and attendant job losses would be the inevitable result of the deal's collapse. Numerous mayors, as well as rank-and-file steelworkers, have come out strongly in favor of the Merger for exactly this reason.[2] ¶¶ 15, 97. Nor do the Oppositions deny Cliffs' anticompetitive goal or the injury that the American economy will suffer if Cliffs gets its way. In fact, Goncalves at his press conference mocked those who might complain that the price of cars and trucks bought by ordinary Americans will go up if he succeeds in consolidating all domestic blast furnaces under his control.

Defendants' own words and conduct confirm they have no intention of halting their anticompetitive and tortious conduct during the pendency of this litigation. For more than 18 months, Defendants have tried to force U. S. Steel into a merger with Cliffs. They continued to do so after losing an auction process; they continued to do so after losing an arbitration pursuant to the USW's labor agreement; and they will continue to do so absent relief. Defendants' effort to interfere in an existing contract and protect and achieve monopolies is unprecedented. It needs to

---

[2] Defendants Cliffs and Goncalves attach a table to their Opposition (ECF No. 51-1) citing politicians who purportedly oppose the Merger, but fail to acknowledge that the transaction was widely supported by multiple CFIUS member agencies, and that CFIUS itself was deadlocked on the transaction. Moreover, the blocking of the Merger is unprecedented as the President has never before prohibited an acquisition of a U.S. company by a company based in Japan.

stop. In contrast, Defendants are not prejudiced by expedition. As Goncalves admitted: "I have never had so much time to prepare for a lawsuit that I knew that was coming."[3] The Court can consider Defendants' defenses at the same time as Plaintiffs' preliminary injunction request on an appropriate factual record. Expedition would simply allow the Court to timely act on an appropriate record. Plaintiffs' Motion should be granted.

## ARGUMENT

Courts routinely permit expedited discovery where, as here, targeted discovery can aid the Court in efficient adjudication of the preliminary injunction motion. Mot. 9-10. Plaintiffs readily satisfy the Third Circuit's good cause standard for expedition, and the Oppositions do not demonstrate otherwise.[4]

**I.      Plaintiffs Challenge Defendants Unlawful Alliance to Force a Merger with Cliffs.**

The Oppositions mock and mischaracterize the Complaint as based on "tinfoil conspirac[ies]" and as seeking to enjoin protected speech. Cliffs Opp. 2. These merits arguments are premature and provide no basis to deny expedition, as explained below. But they are also plain wrong: the Complaint is based on Defendants' *own* admissions and descriptions of their objectives and conduct (not imagined conspiracies), and what it seeks to end is not protected speech, but Defendants' illegal agreement—one that existed before NSC appeared on the scene and one that Goncalves confirmed will continue even if the Merger collapses.

---

[3] Fox Business, *Cleveland-Cliffs CEO punches back after being named in Nippon-US Steel lawsuit*, YouTube, at 1:03, (Jan. 7, 2025), https://www.youtube.com/watch?v=k47LXbSHhuw.

[4] *See, e.g.*, *Samuel, Son & Co.* v. *Beach*, 2013 WL 4855325, at *3 (W.D. Pa. Sept. 11, 2013) ("district courts within this circuit have typically 'required the party seeking discovery to show good cause for its motion, such that the request is reasonable in light of the circumstances'"); *Sawhorse Enters., Inc.* v. *Church & Dwight Co.*, 2013 WL 1343608, at *4 (D.N.J. Apr. 3, 2013) ("If narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted."); Mot. 10.

3

Indeed, this is the rare case in which the existence of Defendants' unlawful conspiracy and the anticompetitive motivations behind it are plain for all to see. Goncalves and McCall have repeatedly asserted that the USW would "*only* support Cleveland-Cliffs for a proposed acquisition of U. S. Steel"; that "the *only* buyer the union accepts for the union-represented assets is Cleveland-Cliffs"; and that "[t]here's *nothing* that [NSC] can do that's gonna bring the [USW] on their side." ¶¶ 10, 66, 72. Likewise, while not the focus of this proceeding, the corruption of the CFIUS process by Defendants is unprecedented. CFIUS review is not supposed to be tainted by domestic electoral politics. Rather, the statutorily mandated review requires a determination of an actual threat to national security and that there are no agreements that can be reached to mitigate that risk. *See* 50 U.S.C. § 4565. Due process is expected and guaranteed. *See Ralls Corp.* v. *CFIUS*, 758 F.3d 296, 311 (D.C. Cir. 2014). But, in the words of Goncalves, "there's no [CFIUS] process. This is not going to be a process. *CFIUS is just cover for a President to kill a deal.*" ¶ 72.

## II. Plaintiffs' Request for Expedition is Timely and Procedurally Proper.

The Oppositions contend that the Motion is both too early and too late. Neither is correct.

As for too early, Defendants contend that because the Merger cannot move forward prior to resolution of the D.C. Circuit litigation, expedition is premature. But regardless of the outcome in the D.C. Circuit, Plaintiffs will continue to be irreparably harmed by Defendants' illegal agreement. If the Executive Order stands and the Merger is permanently blocked, U. S. Steel will need to consider its stand-alone strategy, including potentially new strategic alternatives. And NSC will also quickly need to consider alternative transactions to enter and compete in domestic steel markets. McCall all but concedes that Plaintiffs will suffer irreparable harm in this scenario. McCall Opp. 10. And contrary to Cliffs' suggestion that such harm is speculative (Cliffs Opp. 13-14), Goncalves himself confirmed that such harm is certain, telling the world just days ago that he

4

still "want[s] to buy" U. S. Steel, albeit at a far lower price than Cliffs previously offered,[5] and will "make this thing [] happen" once the current Merger is abandoned.[6] Defendants' near-daily proliferation of lies and deception about Plaintiffs and their executives will make it harder for U. S. Steel to find strategic partners. As set out in the Complaint, Cliffs has routinely sought to denigrate U. S. Steel to its investors to weaken its stock price, making it more vulnerable to Cliffs' low-ball bid—a bid which would (as was the case with Cliffs' previous offer) pose severe antitrust risks due to U. S. Steel's extensive competitive overlap with Cliffs. *See* ¶¶ 52, 68, 95. Meanwhile, Goncalves' ongoing race-baiting is designed to harm NSC's reputation domestically and make it more difficult to challenge Cliffs' market dominance.

Alternatively, if Plaintiffs succeed in the D.C. Circuit, review of the Merger will be remanded to CFIUS for further process, which should be free of Defendants' unlawful interference. Or if President-elect Trump rescinds the Executive Order, Plaintiffs should likewise be free to pursue closing without Defendants' illegal interference. If McCall could no longer count on the illegal agreement leading to a Cliffs' acquisition of U. S. Steel, there is every reason to think he might finally engage with NSC and consider the interests of the Mon Valley workers.

Likewise misplaced is Defendants' contention that Plaintiffs can extend the June 18, 2025 outside date to allow time to litigate after the D.C. Circuit's ruling. McCall Opp. 7; Cliffs Opp. 4. That entirely brushes aside the ongoing harm Plaintiffs are incurring as a result of continued delay in consummating this procompetitive Merger. It also ignores the complexities involved in extending the outside date which may require a new shareholder vote (with which Defendants are

---

[5] Anirban Sen et al., *Cleveland-Cliffs eyeing all-cash bid for U.S. Steel, source says*, Reuters (Jan. 13, 2025), https://www.reuters.com/markets/deals/cleveland-cliffs-partners-with-nucor-potentially-bid-us-steel-cnbc-reports-2025-01-13/ (reporting that Cliffs is preparing a potential all-cash bid for U. S. Steel "with an offer in the high $30s per share").

[6] *Cleveland-Cliffs Butler Press Conference*, *supra*, n. 1, at 44:07, 1:37:48.

sure to seek to interfere), *see Sjunde AP-Fonden* v. *Activision Blizzard*, 2024 WL 863290, at *9 (Del. Ch. Feb. 29, 2024), and obtaining new or materially different financing arrangements that increase costs and complexity in a $14.9 billion deal and create opportunities for Defendants to engage in further malfeasance. And it will take both parties to agree to keep the deal alive after June 18, against the backdrop of Defendants' relentless pressure campaign that is designed to make the costs of doing so high in the hope that one of them will balk. Cliffs has already attempted to get NSC to abandon the Merger and do a deal with Cliffs. Indeed, as of this week, Cliffs is trying to induce U. S. Steel to walk away from the Merger and accept a new bid.

As for too late, Defendants fault Plaintiffs for seeking to engage with the USW and CFIUS in good faith rather than rushing immediately to court to enjoin Defendants' ongoing conspiracy. Cliffs Opp. 7. Nothing in the law supports any such requirement, and Defendants' cases are inapposite. *See, e.g.*, *CT Install Am., LLC* v. *Boryszewski*, 2023 WL 3306537, at *2–3 (E.D. Pa. May 8, 2023) (denying preliminary injunction because of "unexplained" delay where plaintiff "never meaningfully pressed its claims" and "did not take any discovery").

Finally, Defendants' argument that discovery somehow cannot proceed because Plaintiffs have not filed a full-blown merits brief in support of their preliminary injunction application is incorrect. McCall Opp. 5-6; Cliffs Opp. 17. Nothing in the Local Rules requires such a pre-discovery filing; none of the cases that Defendants cite do either; and it is entirely common (and efficient) for courts to order expedited discovery before the moving party files its merits brief. *See, e.g.*, *Samuel, Son*, 2013 WL 4855325, at *4 (dismissing motion for preliminary injunction without prejudice while granting motion for expedition in anticipation of later preliminary injunction

hearing).[7]  Indeed, there is no requirement that a preliminary injunction motion even be pending for expedited discovery to be granted.  *Bancroft Life & Cas. ICC* v. *Intercontinental Mgmt.*, 2010 WL 11566472, at *2 (W.D. Pa. July 23, 2010) (finding no such requirement).  That sequencing makes perfect sense because the precise issues before the Court at the preliminary injunction hearing will be crystallized by the discovery record.  And Defendants' ability to lard their Oppositions with denials and merits arguments confirms that there are "wildly divergent factual assertions" and that Plaintiffs' Motion more than sufficiently details the claims on which expedited relief is sought.  *Exclusive Supplements, Inc.* v. *Abdelgawad*, 2013 WL 160275, at *1 (W.D. Pa. Jan. 15, 2013) (granting motion for expedited discovery "[g]iven the wildly divergent factual assertions made by the parties").  The Court has ample discretion to manage its docket, and preliminary injunction briefing will be far more helpful to the Court with the benefit of discovery than without it.

### III.     <u>**Plaintiffs Have Appropriately Set Out the Injunctive Relief They Seek**</u>.

Defendants wrongly assert that Plaintiffs have failed to specify the conduct they are seeking to enjoin.  McCall Opp. 3; Cliffs Opp. 12-13.  Plaintiffs did just that in their Motion, explaining that they seek to "pursue closing of the Merger without the interference caused by Defendants' unlawful agreement."  Mot. 13.  Nothing more is required at this stage, and courts routinely recognize that the scope of a preliminary injunction should be shaped by the evidentiary record at the hearing.  *See, e.g.*, *Danieli Corp.* v. *SMS Grp., Inc.*, 2022 WL 2541981, at *2 (W.D. Pa. Mar.

---

[7] This sequencing is common when seeking a preliminary injunction in the transaction context. *See, e.g.*, *Cnty. of York Emps. Ret. Plan* v. *Merrill Lynch & Co.*, 2008 WL 4824053 (Del. Ch. Oct. 28, 2008) (granting motion for expedited discovery made "in anticipation of pursuing a preliminary injunction").  It is also common in merger challenges brought under the federal Clayton Act.  *See Pennsylvania* v. *Ctr. Lane Partners*, 2024 WL 4792043, at *7 n.6 (W.D. Pa. Nov. 14, 2024) ("In many preliminary-injunction cases like this one [involving Section 7 of the Clayton Act], the parties seek and take expedited discovery before the hearing") (collecting cases).

18, 2022) (explaining discovery has "great importance in helping [a plaintiff] create a record addressing all of the claims and defenses at issue . . . to make its case at the time of the [preliminary injunction] hearing" and aiding in "the ultimate disposition of . . . issues relating to the sought preliminary injunction"); *Nat'l Abortion Fed'n* v. *Ctr. for Med. Progress*, 2015 WL 13333328, at *3 (N.D. Cal. Nov. 20, 2015) (ordering expedited discovery because such discovery was "central to determine the appropriate scope of any preliminary injunction"). Nonetheless, Plaintiffs anticipate that an injunction would enjoin Defendants from:

- performing their unlawful agreement to try to force U. S. Steel to merge with Cliffs and no one else;

- making threats about or concerning U. S. Steel not transacting with Cliffs;

- making false assertions concerning the Merger, including but not limited to claiming that (i) NSC's commitments to the USW do not include honoring all commitments in existing USW agreements and assuming all obligations under the BLA and (ii) NSC plans to shut down unionized plants, transfer production to non-union facilities, and import excess blast-furnace produced steel slabs from Japan, notwithstanding commitments to the contrary;

- taking actions to interfere with the consummation or performance of the Merger; and

- pursuing a transaction with U. S. Steel that is a product of their ongoing illegal conduct.

Contrary to Defendants' assertions, such relief enjoining Defendants' conduct is "'precise' and narrowly 'tailored' to achieve the 'pin-pointed objective' of the 'needs of the case'"—namely, freeing Plaintiffs from Defendants' illegal antitrust conspiracy to undermine U. S. Steel's competitive vitality and interfere with NSC's procompetitive investment. *HIRA Educ. Servs. of N. Am.* v. *Augustine*, 2019 WL 120729, at *6 (W.D. Pa. Jan. 7, 2019) (quoting *Tory* v. *Cochran*, 544 U.S. 734, 738 (2005)).

So too with regard to Defendants' repeated and ongoing efforts to tortiously interfere with the Merger. Defendants' public conduct aimed at the Merger, including comments from

8

Goncalves again just this week urging Plaintiffs to "[a]bandon … [t]he [M]erger agreement" (*see supra*, pp. 4-5), readily demonstrate Defendants' ongoing efforts to induce a breach or nonperformance of the agreement—quintessential tortious conduct the Oppositions ignore and that courts have long recognized supports an injunction. *See Bancroft Life & Cas. ICC, Ltd.* v. *Intercontinental Mgmt*, 456 F. App'x 184, 189 (3d Cir. 2012) (upholding preliminary injunction enjoining defendant from inducing future breaches of plaintiff's contractual relationships with third parties); *Ride the Ducks of Phila., LLC* v. *Duck Boat Tours, Inc.*, 138 F. App'x 431, 434 (3d Cir. 2005) (upholding injunction even where "such injury has not yet occurred" "because the purpose of a preliminary injunction is to prevent the occurrence of injuries").

In any event, the appropriate time and place to debate the scope of the injunction is the preliminary injunction proceeding itself, upon an appropriate record. Defendants' arguments are not a basis on which to deny expedition and the setting of a hearing date.

**IV.    Plaintiffs' Claims Easily Surpass the Good Cause Standard for Expedition.**

Because the standard for expedition is simply good cause, Defendants' protracted arguments on Plaintiffs' purported likelihood of success on the merits are likewise premature. McCall Opp. 8-9; Cliffs Opp. 19. Defendants' repeated denials of their unlawful conduct only confirm that there are material disputes of fact between the parties meriting resolution through expedited discovery. And while Defendants are free to challenge the merits of Plaintiffs' claims through a dispositive motion, any stay in discovery pending a decision would be inappropriate. Defendants have not moved for such relief, and "[m]otions to stay discovery are not favored." *Creativ Pultrusions, Inc.* v. *Cooper B-Line*, *Inc.*, 2019 WL 4058660, at *3 (W.D. Pa. Aug. 27, 2019). Indeed, Defendants' own authority recognizes that "[a] stay of discovery is not appropriate solely because a motion to dismiss is pending." *Babalola* v. *Donegal Mut. Ins. Co.*, 2008 WL 5278393, at *1 (M.D. Pa. Dec. 18, 2008) (cited at Cliffs Opp. 20).

9

Defendants attempt to delay discovery by citing the *Noerr-Pennington* doctrine (McCall Opp. 8-9; Cliffs Opp. 10), but while the "doctrine protects citizens *from liability*," it "is not a bar to discovery." *See, e.g.*, *Barnes Found.* v. *Twp. of Lower Merion*, 1996 WL 862451, at *4 (E.D. Pa. Dec. 23, 1996) (emphasis in original). Defendants' appeal to *Noerr-Pennington* is misplaced in any event. Defendants' anticompetitive conducts extends beyond any purported "lobbying" activity, and Plaintiffs do not seek to enjoin Defendants' "political speech." Cliffs Opp. 9-11. Plaintiffs seek to enjoin Defendants' unlawful agreement which constitutes private commercial activity outside the bounds of *Noerr-Pennington*.[8] ¶¶ 174-75.

## V.     Plaintiffs' Requested Discovery Is Limited and Manageable.

Plaintiffs request a focused course of expedited discovery compatible with their need for timely relief and pinpointed on the conduct at issue. Plaintiffs primarily seek documents and testimony concerning the Merger, Defendants' communications with each other regarding it, and activities taken pursuant to their illegal agreement. These documents are not in Plaintiffs' possession. Defendants complain of the burden associated with Plaintiffs' proposed schedule, but the parties here are well-represented and familiar with expedited litigation. And in any event, Plaintiffs intend to work cooperatively with Defendants on a schedule and discovery plan that appropriately addresses burden issues in light of any schedule ordered by the Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (i) granting Plaintiffs' Motion for Expedited Proceedings, and (ii) setting an evidentiary hearing on Plaintiffs' preliminary injunction motion to commence on or about April 28, 2025, or as soon thereafter as is practicable for the Court.

---

[8] Regardless, whether conduct is protected by *Noerr–Pennington* is a quintessential "question of fact." *Kravco Co.* v. *Valley Forge Ctr. Assocs.*, 1992 WL 97926, at *3 (E.D. Pa. Apr. 30, 1992).

| | |
|---|---|
| January 16, 2025 | Respectfully submitted, |

<table>
<tr><td>

OF COUNSEL:

Grant R. Mainland (NY 4628319)
James H. Weingarten (DC 985070)
(*pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Phone: (212) 530-5000
Fax: (212) 530-5219
gmainland@milbank.com
jweingarten@milbank.com

Jonathan M. Moses (NY 2836054)
Adam L. Goodman (NY 5207816)
(*pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Phone: (212) 403-1000
Fax: (212) 403-2000
jmmoses@wlrk.com
algoodman@wlrk.com

</td><td>

/s/ *Thomas E. Birsic*
Thomas E. Birsic (PA 31092)
Eric R.I. Cottle (PA 78152)
Wesley A. Prichard (PA 324411)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6538
Fax: (412) 355-6501
thomas.birsic@klgates.com
eric.cottle@klgates.com
wesley.prichard@klgates.com

*Attorneys for Plaintiff United States Steel Corporation*

</td></tr>
<tr><td>

OF COUNSEL:

David B. Hennes (NY 2773190)
Alexander B. Simkin (NY 4463691)
Andrew S. Todres (NY 5347521)
Stefan P. Schropp (DC 1026864)
(*pro hac vice*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Phone: (212) 596-9000
David.Hennes@ropesgray.com
Alexander.Simkin@ropesgray.com
Andrew.Todres@ropesgray.com
Stefan.Schropp@ropesgray.com

</td><td>

/s/ *Daniel I. Booker*
Daniel I. Booker (PA 10319)
Christopher R. Brennan (PA 313534)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Phone: (412) 288-3131
Fax: (412) 288-3063
DBooker@reedsmith.com
CBrennan@reedsmith.com

*Attorneys for Plaintiffs Nippon Steel Corporation and Nippon Steel North America, Inc.*

</td></tr>
</table>

11