## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES STEEL CORPORATION,
NIPPON STEEL CORPORATION, and
NIPPON STEEL NORTH AMERICA, INC.,

                      Plaintiffs

    vs.

CLEVELAND-CLIFFS INC., LOURENCO
GONCALVES, and DAVID McCALL,

                      Defendants.

Civil Action No. 2:25-cv-15

Hon. Marilyn J. Horan

**DEFENDANTS CLEVELAND-CLIFFS INC. AND LOURENCO GONCALVES' BRIEF
IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS 1, 4, 8, & 9 AND FOR
<u>AN AWARD OF ATTORNEY FEES, COURT COSTS, AND LITIGATION EXPENSES</u>**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL STANDARD ON MOTION TO DISMISS .............................................................. 2

ARGUMENT ............................................................................................................................... 2

I.    ALL FOUR CLAIMS MUST BE DISMISSED UNDER THE FIRST AMENDMENT AND THE *NOERR-PENNINGTON* DOCTRINE ........................................................................ 2

    A.    The First Amendment Protects Defendants' Speech On Matters Of Public Concern Like The Fate Of The American Steel Industry ...................................... 2

    B.    *Noerr-Pennington* Protects Defendants' Petitioning Activity ............................... 5

        1.    The Complaint Attacks Protected Petitioning Activity ............................. 6

        2.    Any Conduct Plaintiffs Argue Is Not Petitioning Activity Necessarily Caused No Injury To Plaintiffs ................................................................. 8

        3.    As A Matter Of Law, The "Sham" Exception To *Noerr-Pennington* Does Not Apply .............................................................................................. 10

II.   THE ANTITRUST CONSPIRACY CLAIMS FAIL TO STATE A CLAIM ....................... 12

    A.    Plaintiffs Do Not Plausibly Allege An Antitrust Conspiracy Between Cliffs, Mr. Goncalves, And Mr. McCall ........................................................................ 12

        1.    The Complaint Lacks Direct Evidence Of A Conspiracy ......................... 12

        2.    The Complaint Lacks Circumstantial Evidence Of A Conspiracy ........... 14

    B.    Plaintiffs Do Not Plausibly Allege Antitrust Standing ........................................ 16

        1.    Plaintiffs Have Not Suffered Any Harm Of The Type The Antitrust Laws Were Designed To Prevent ...................................................................... 16

        2.    Plaintiffs Have Not Suffered Any Injury That Flows From The Conduct Of Defendants That Plaintiffs Claim Violates Antitrust Laws ................. 17

    C.    Plaintiffs' Invocation Of DOJ Antitrust Review Disproves Count 4 .................. 18

III.  THE TORTIOUS INTERFERENCE CLAIMS FAIL TO STATE A CLAIM ..................... 19

    A.    Plaintiffs Cannot State A Claim For Tortious Interference With A Contract That Has Not Been Breached ........................................................................................ 20

    B.    Plaintiffs Cannot State A Claim For Tortious Interference With Unnamed Potential Bidders In A Hypothetical Future Sale ................................................ 22

    C.    Plaintiffs Fail To Plead The Absence Of A Privilege Or Justification ................ 23

    D.    Under PA-UPEPA, Defendants Are Entitled To Their Attorney Fees, Court Costs, And Litigation Expenses ................................................................................... 24

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
   263 F.3d 239 (3d Cir. 2001)......................................................................................9

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
   561 F.3d 199 (3d Cir. 2009)..............................................................................19, 22

*Al Hamilton Contracting Co. v. Cowder*,
   644 A.2d 188 (Pa. Sup. Ct. 1994)...........................................................................21

*Am. Freedom Def. Initiative v. Se. Penn. Transp. Auth.*,
   92 F.3d 314 (E.D. Pa. 2015) .....................................................................................5

*Am. Handiwork, Inc. v. 84 Lumber Co.*,
   2021 WL 3666478 (W.D. Pa. Aug. 18, 2021) .........................................................23

*Am. Osteopathic Ass'n v. Am. Bd. of Internal Med.*,
   555 F. Supp. 3d 142 (E.D. Pa. 2021).......................................................................21

*Arconic Corp. v. Novelis Inc.*,
   2023 WL 5510574 (W.D. Pa. Aug. 25, 2023) .........................................................16

*Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Memorial Hosp.*,
   185 F.3d 154 (3d Cir. 1999)..............................................................................10, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................2

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999).....................................................................................13

*Baker v. Moon Area Sch. Dist.*,
   2018 WL 4057179 (W.D. Pa. Aug. 27, 2018) .........................................................24

*In re Bath & Kitchen Fixtures Antitrust Litig.*,
   2006 WL 2038605 (E.D. Pa. July 19, 2006)...........................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................2, 12, 15

*BP Envt'l Servs., Inc. v. Republic Servs., Inc.*,
   946 F. Supp. 2d 402 (E.D. Pa. 2013) ......................................................................23

*Broad. Music, Inc. v. Columbia Broad. Sys.*,
441 U.S. 1 (1979) ........................................................................................... 19

*Brownsville Golden Age Nursing Home, Inc. v. Wells*,
839 F.2d 155 (3d Cir. 1988) ........................................................................... 21

*Brunson Commc'ns, Inc. v. Arbitron, Inc.*,
239 F. Supp. 2d 550 (E.D. Pa. 2002) ............................................................. 22

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ....................................................................................... 18

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011) ..................................................................... 13, 14

*Charbonneau v. Chartis Prop. Cas. Co.*,
680 F. App'x 94 (3d Cir. 2017) ..................................................................... 20

*Cheminor Drugs, Ltd. v. Ethyl Corp.*,
168 F.3d 119 (3rd Cir. 1999) ......................................................................... 24

*City of Columbia v. Omni Outdoor Advert.*,
499 U.S. 365 (1991) .................................................................... 5, 6, 8, 10, 11

*City of Pittsburgh v. W. Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998) ........................................................................... 18

*Cooper v. Borough of Wenonah*,
977 F. Supp. 305 (D.N.J. 1997) ..................................................................... 25

*Coral Aviation Grp. v. Muller*,
2024 WL 3889628 (E.D. Pa. Aug. 21, 2024) ................................................... 6

*DeAngelis v. Encompass Home & Auto Ins. Co.*,
2023 WL 3727005 (E.D. Pa. May 30, 2023) ................................................... 20

*Dommel Props. LLC v. Jonestown Bank & Tr. Co.*,
626 F. App'x 361 (3d Cir. 2015) ................................................................... 20

*Dreiling Millennium Tr. II v. Reliant Renal Care, Inc.*,
833 F. Supp. 2d 429 (E.D. Pa. 2011) ........................................................ 20, 21

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961) ............................................................................. 6, 7, 8, 9

*Eaton v. Newport Bd. of Educ.*,
975 F.2d 292 (6th Cir. 1992) ........................................................................... 8

*Eisai, Inc. v. Sanofi Aventis U.S., LLC,*
    821 F.3d 394 (3d Cir. 2016)...........................................................................................17

*Evans Hotels, LLC v. Unite Here Local 30,*
    433 F. Supp. 3d 1130 (S.D. Cal. 2020)............................................................................7

*Fresh Made, Inc. v. Lifeway Foods, Inc.,*
    2002 WL 31246922 (E.D. Pa. Aug. 9, 2002) ................................................................22

*Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    40 F.3d 63 (3d Cir. 1994)...............................................................................................21

*Geomatrix, LLC v. NSF Int'l,*
    82 F. 4th 466 (6th Cir. 2023) ...................................................................................5, 7, 9

*Glob. Arena, LLC v. Eterpreting, LLC,*
    2016 WL 7156396 (E.D. Pa. Dec. 8, 2016)...................................................................20

*Gok v. Roman Cath. Church,*
    550 F. Supp. 3d 221 (E.D. Pa. 2021) .............................................................................25

*Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.,*
    806 F.3d 162 (3d Cir. 2015).............................................................................................5

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.,*
    602 F.3d 237 (3d Cir. 2010)...........................................................................................12

*In re Ins. Brokerage Antitrust Litig.,*
    618 F.3d 300 (3d Cir. 2010)...............................................................................12, 14, 15

*Jaramillo v. Experian Inf. Sols., Inc.,*
    155 F. Supp. 2d 356 (E.D. Pa. 2001) .............................................................................22

*Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs., Inc.,*
    175 F.3d 848 (10th Cir. 1999) .....................................................................................3, 5

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.,*
    2014 WL 2813312 (E.D. Pa. June 23, 2014) .................................................................15

*In re Mallinckrodt PLC,*
    638 B.R. 57 (Bankr. D. Del. 2021) ................................................................................18

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,*
    937 F. Supp. 435 (E.D. Pa. 1996), *aff'd,* 107 F.3d 1026 (3d Cir. 1997).....................3, 4, 9, 10

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,*
    107 F.3d 1026 (3d Cir. 1997)....................................................................................3, 8, 9, 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................16

*In re Merck Mumps Vaccine Antitrust Litig.*,
    2024 WL 4432076 (3d Cir. 2024)........................................11

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)................................................................14

*Pawlowski v. Smorto*,
    588 A.2d 36 (Pa. Super. Ct. 1991)......................................20

*Phila. Taxi Ass'n v. Uber Techs., Inc.*,
    886 F.3d 332 (3d Cir. 2018)............................................16, 17

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)............................................................10, 11

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
    614 F.3d 57 (3d Cir. 2010)....................................................16

*Sansom v. Crown Equip. Corp.*,
    880 F. Supp. 2d 648 (W.D. Pa. 2012)..................................20

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*,
    401 F.3d 123 (3d Cir. 2005)....................................................6

*Schachar v. Am. Acad. of Opthalmology, Inc.*,
    870 F.2d 397 (7th Cir. 1989) (Easterbrook, J.).....................3

*SEI Glob. Servs., Inc. v. SS&C Advent*,
    2022 WL 2356730 (3d Cir. June 30, 2022) ..........................17

*Session Tank Liners, Inc. v. Joor Mf'g*,
    17 F.3d 295 (9th Cir. 1994) ....................................................8

*SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*,
    2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) ........................5

*Snyder v. Phelps*,
    562 U.S. 443 (2011)............................................................3, 4

*Solid Wood Cabinet Co. v. Partners Home Supply*,
    2015 WL 1208182 (E.D. Pa. Mar. 13, 2015)........................23

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ..................................................7

*Tannous v. Cabrini Univ.*,
  697 F. Supp. 3d 350 (E.D. Pa. 2023) ............................................................5

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
  844 F. Supp. 2d 571 (E.D. Pa. 2012) .....................................................13, 15

*United States v. Syufy Enters.*,
  903 F.2d 659 (9th Cir. 1990) ................................................................16

*V&L Cicione, Inc. v. C. Schmidt & Sons, Inc.*,
  403 F. Supp. 643 (E.D. Pa. 1975), *aff'd*, 565 F.2d 154 (3d Cir. 1977)...................18

*Valspar Corp. v. E.I. Du Pont de Nemours & Co.*,
  873 F.3d 185 (3d Cir. 2017)..................................................................13

*VIM, Inc. v. Somerset Hotel Ass'n*,
  19 F. Supp. 2d 422 (W.D. Pa. 1998)........................................................10

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
  868 F.3d 132 (3d Cir. 2017)..................................................................18

*Wilmington Steel Processing Co. v. Citisteel USA, Inc.*,
  2008 WL 5975419 (Pa. Com. Pl. Nov. 4, 2009), *aff'd*, 998 A.2d 999 (Pa.
  Super. Ct. 2010) ..............................................................................24

*Windsor Sec., Inc. v. Hartford Life Ins. Co.*,
  986 F.2d 655 (3d Cir. 1993)..................................................................24

## Statutes / Rules

42 Pa.C.S.A. § 8340.11...........................................................................25

42 Pa.C.S.A. § 8340.13...........................................................................25

42 Pa.C.S.A. § 8340.14...........................................................................25

42 Pa.C.S.A. § 8340.15........................................................................2, 25

42 Pa.C.S.A. § 8340.18........................................................................2, 25

Fed. R. Civ. P. 11...............................................................................11

## Other Authorities

*2024 World Steel in Figures*, WORLD STEEL ASS'N (May 27, 2024),
   https://worldsteel.org/wp-content/uploads/World-Steel-in-Figures-2024.pdf.........................17

CNBC Television, *US Steel CEO on Lawsuit to Biden Administration Following
   Dissolved Merger with Nippon Steel*, YouTube (Jan. 7, 2025),
   https://bit.ly/42H8TWm.................................................................................................3

Yuri Kage Yama, *Nippon Steel Stands Firm on a US Steel Takeover and Denies
   Risks Cited by Biden*, ASSOCIATED PRESS (Jan. 6, 2025), https://bit.ly/4hrd2lS ......................3

Joint Press Release, U.S. Steel Corp. & Nippon Steel Corp., *Nippon Steel
   Corporation and U. S. Steel Condemn U.S. Government's Unlawful Decision
   to Block Proposed Acquisition of U. S. Steel* (Jan. 3, 2025),
   https://investors.ussteel.com/news-events/news-releases/detail/708/nippon-
   steel-corporation-and-u-s-steel-condemn-u-s ............................................................3

U.S. CONST. amend. I........................................................................................................5

## PRELIMINARY STATEMENT

After the White House blocked their plan to sell a leading domestic steel company to a foreign buyer with a history of trade violations, Plaintiffs have lashed out by filing a retaliatory lawsuit against private citizens that is as un-American as it gets. They seek to punish, and ask this Court to restrain, Defendants' exercise of their fundamental First Amendment rights to speak freely about matters of public concern and petition the government. The Complaint alleges no actual economic restraint or interference, just sputtering disapproval of what Defendants have said about Plaintiffs' proposed Merger. No matter what inflammatory labels they put on Defendants' speech, Plaintiffs cannot state a claim on the basis that such speech was unlawful. The Constitution, decades of precedent, and Pennsylvania's Anti-SLAPP statute all require dismissing Plaintiffs' attempts to silence Defendants, and indeed Defendants are entitled to the fees and costs they have incurred from even facing this unconstitutional attack.

Nor are First Amendment protections the only ground compelling dismissal. As a statutory matter, neither of the antitrust conspiracy claims (counts 1 and 4) are well pled. The Complaint contains neither direct nor circumstantial evidence of a conspiracy. To the contrary, it sets out perfectly clearly why Cliffs, Mr. Goncalves, and Mr. McCall would each independently oppose selling U.S. Steel to Nippon Steel, which is fatal to pleading a conspiracy. And the Complaint likewise does not allege antitrust standing, because Plaintiffs complain of a purported "injury" that was not inflicted by any restraint of trade or monopoly, but instead by the President's Order blocking the Merger, which does not inflict an ***antitrust*** injury.

The tortious interference claims (counts 8 and 9) likewise must be dismissed for failing to plead basic elements of these causes of action. Plaintiffs allege no breach of contract, which is fatal to a claim for tortiously interfering with a contract. Nor do they allege a specific prospective contractual relationship in the hypothetical event that Plaintiffs abandon their Merger, much less

an objectively reasonable probability that some unnamed entity would buy U.S. Steel but-for Defendants' alleged interference, both of which are fatal to a claim for tortiously interfering with prospective contractual relations. And they fail to allege that Defendants' actions were not privileged or justified, as the Complaint makes clear that these actions are privileged speech and reflect a justified, legitimate economic interest. Pennsylvania common law requires dismissing these claims, and Pennsylvania statutory law provides for an award against Plaintiffs that makes Defendants whole for facing "a cause of action based on protected public expression" in the first place. 42 Pa.C.S.A. §§ 8340.15, 8340.18(a)(1).

For each of these reasons, and as set forth below, counts 1, 4, 8, and 9 should be dismissed.

## LEGAL STANDARD ON MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

I.    **ALL FOUR CLAIMS MUST BE DISMISSED UNDER THE FIRST AMENDMENT AND THE *NOERR-PENNINGTON* DOCTRINE**

A.    **The First Amendment Protects Defendants' Speech On Matters Of Public Concern Like The Fate Of The American Steel Industry**

Plaintiffs' Complaint is nothing more than a challenge to Defendants' exercise of their First Amendment rights. It complains at length about public comments that Cliffs, Mr. Goncalves, and Mr. McCall have made about the dangers that Plaintiffs' proposed Merger poses to steelworkers, the domestic steel industry, and national security. But it does not pair these criticisms with allegations of any actual economic restraints that are divorced from speech. This is fatal to the Complaint, because Defendants have every right to express their views—even loudly and critically

2

and jointly—about an issue as important as the resilience of the American steel industry.

There can be no doubt that the challenged "[s]peech deals with matters of public concern," as it "can be fairly considered as relating to any matter of political, social, or other concern to the community" and, at minimum, "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (cleaned up). Plaintiffs have exercised their own speech rights by issuing press releases[1] and giving interviews[2] on the exact same topics.

Because "speech on matters of public concern is at the heart of the First Amendment's protection," the statements that Plaintiffs seek to use as a basis for a federal lawsuit "occup[y] the highest rung of the hierarchy of First Amendment values, and [are] entitled to special protection." *Id.* at 451-52 (cleaned up). They cannot give rise to liability. "[T]he First Amendment does not allow antitrust claims to be predicated solely on protected speech." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs., Inc.*, 175 F.3d 848, 860 (10th Cir. 1999). "There can be no restraint of trade without a restraint," *Schachar v. Am. Acad. of Opthalmology, Inc.*, 870 F.2d 397, 397 (7th Cir. 1989) (Easterbrook, J.), and a defendant "does not restrain trade or monopolize an industry by speaking out on an issue," *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 937 F. Supp. 435, 444 (E.D. Pa. 1996) ("*Mass. I*"), *aff'd*, 107 F.3d 1026 (3d Cir. 1997) ("*Mass. II*"). "When an

---

[1]  *E.g.*, Joint Press Release, U.S. Steel Corp. & Nippon Steel Corp., *Nippon Steel Corporation and U. S. Steel Condemn U.S. Government's Unlawful Decision to Block Proposed Acquisition of U. S. Steel* (Jan. 3, 2025), https://investors.ussteel.com/news-events/news-releases/detail/708/nippon-steel-corporation-and-u-s-steel-condemn-u-s.

[2]  *E.g.*, CNBC Television, *US Steel CEO on Lawsuit to Biden Administration Following Dissolved Merger with Nippon Steel*, YouTube (Jan. 7, 2025), https://bit.ly/42H8TWm; Yuri Kage Yama, *Nippon Steel Stands Firm on a US Steel Takeover and Denies Risks Cited by Biden*, ASSOCIATED PRESS (Jan. 6, 2025), https://bit.ly/4hrd2lS.

association merely states its position, and a company is stigmatized because of that statement, there is no basis for antitrust liability." *Id.*

Ignoring these principles, Plaintiffs directly attack Defendants' speech about the future of the domestic steel industry, particularly the USW's August 2023 endorsement of Cliffs' bid to buy U.S. Steel and Mr. Goncalves' publicly-expressed opinion that Cliffs is "the only viable buyer." Compl. ¶¶ 47, 84, 169, 201-02. Plaintiffs claim they are injured by such statements because "[a]s a practical matter, no other company can bid successfully, or engage with U. S. Steel in other strategic alternatives" as long as Defendants "exclusive[ly] support" Cliffs' bid. *Id.* ¶¶ 202-03. Ignore, for the moment, that this "exclusive" endorsement is pursuant to an express provision of U.S. Steel's Basic Labor Agreement with the USW,[3] that the endorsement was not made by the sole USW member named as a Defendant,[4] and that Plaintiffs' own filings disprove their allegations about the consequences of the endorsement.[5] Those flaws are serious, but there is one still more fundamental: the First Amendment protects Defendants' right to make "endorsements" and to "exclusive[ly] support" the outcomes they prefer.

The same conclusion applies to claims for tortious interference. "The Free Speech Clause of the First Amendment … can serve as a defense in state tort suits," *Snyder*, 562 U.S. at 451, and "in instances in which a plaintiff's tortious interference claims are based on lawful conduct or speech, the courts have concluded that such lawful activity is insufficient to establish the required

---

[3]  Compl. ¶ 51 ("The USW had assigned its right to bid [for U.S. Steel] under the BLA to Cliffs").

[4]  *See* Dkt. 52-3 (letter from Thomas Conway, Mr. McCall's predecessor); Part II.A, below.

[5]  Plaintiffs' merger filings disclose that, ***after*** the USW's exclusive endorsement of Cliffs' bid, U.S. Steel executed non-disclosure agreements with 19 potential bidders, received 9 indications of interest, and considered 5 "final proposals to acquire all or parts of USS." U.S. Steel Corp. Definitive Proxy Statement (Mar. 12, 2024) (Dkt. 52-9), at 50. This "open and robust" auction process ended with the selection of Nippon Steel, not Cliffs. Compl. ¶ 12. Claims that Defendants' endorsements freeze out other bidders are demonstrably false.

element of improper conduct," *Jefferson Cnty.*, 175 F.3d at 860.  Defendants cannot be held liable

for opposing the Merger and supporting an alternative bid.  *See Tannous v. Cabrini Univ.*, 697 F.

Supp. 3d 350, 366 (E.D. Pa. 2023) (plaintiffs failed to state a claim for tortious interference because

"the content of both Defendants' speech relates to a matter of community concern, and as such is

protected"); *SMJ Grp., Inc. v. 417 Lafayette Rest. LLC*, 2006 WL 2516519, *7 (S.D.N.Y. Aug. 30,

2006) ("interference with plaintiffs' prospective business resulting from defendants' expressive

message … is not actionable under the common law and is protected by the First Amendment").

All claims at issue in this motion seek to impose liability for Defendants' protected speech

about a matter of significant public concern.  But "the First Amendment strongly protects the right

to express opinions on public questions."  *Am. Freedom Def. Initiative v. Se. Penn. Transp. Auth.*,

92 F.3d 314, 332 (E.D. Pa. 2015).  As such, all four claims must be dismissed.

**B.**    ***Noerr-Pennington* Protects Defendants' Petitioning Activity**

The First Amendment protects not just "the freedom of speech," but also the right "to

petition the Government" for specific outcomes, such as disapproving a merger on national

security or other grounds.  U.S. CONST. amend. I.  The *Noerr-Pennington* doctrine bars liability

for exercising that right to petition, even jointly with others and even in favor of an allegedly

anticompetitive outcome.   This is an independent basis to dismiss all four claims.

"The federal antitrust laws [] do not regulate the conduct of private individuals in seeking

anticompetitive action from the government," *City of Columbia v. Omni Outdoor Advert.*, 499 U.S.

365, 379-80 (1991), because "antitrust laws do not supersede the people's right to petition their

government in favor of a desired monopoly," *Geomatrix, LLC v. NSF Int'l*, 82 F. 4th 466, 477 (6th

Cir. 2023).   The doctrine provides a "broad immunity," *Hanover 3201 Realty, LLC v. Vill.*

*Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015), not only for antitrust claims, but also "for

claims of tortious interference with contract and tortious interference with prospective economic

advantage," *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 140 (3d Cir. 2005).  And it applies even when, as Plaintiffs falsely allege, "defendants acted with an improper purpose or motive," *Coral Aviation Grp. v. Muller*, 2024 WL 3889628, *9 (E.D. Pa. Aug. 21, 2024), or "deliberately deceived the public and public officials" to procure action from the government, *Omni*, 499 U.S. at 377.  There is no way for Plaintiffs to plead around this doctrine.

### 1.    The Complaint Attacks Protected Petitioning Activity

The *Noerr* decision, in which the Supreme Court held that allegations similar to those that Plaintiffs make here could not state a claim or support an injunction, illustrates why no part of the Complaint escapes the Constitution's protection for petitioning activity.

In *Noerr*, a consortium of truck operators alleged that railroad companies, an association of their chief executives, and a public relations firm had "conspired to restrain trade in and monopolize the long-distance freight business."  *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 129 (1961).  The "gist of the conspiracy" was that the railroads had "conduct[ed] a publicity campaign against the truckers designed to foster the adoption and retention of laws … destructive of the trucking business, to create an atmosphere of distaste for the truckers among the general public, and to impair the relationships existing between the truckers and their customers."  *Id.*  Like Plaintiffs here, the truckers tried to bolster their challenge to this "publicity campaign" by alleging it involved various deceptive tactics.  *Id.* at 140.

Yet the Supreme Court reversed all of these bases for liability and vacated an injunction like the one Plaintiffs seek here, holding that "[t]he right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so."  *Id.* at 139.  The Court held that allegations of bad intent or even falsity are irrelevant, because "deception, reprehensible as it is, can be of no consequence so far as the Sherman Act is concerned."  *Id.* at 145.  And it rejected

efforts to distinguish direct petitioning activities from comments made "to destroy the goodwill of the truckers, among the public generally and among the truckers' customers particularly, in the hope that by doing so the over-all competitive position of the truckers would be weakened." *Id.* at 142. The Court held that liability on this latter basis "cannot stand under close scrutiny" because "[i]t is inevitable, whenever an attempt is made to influence legislation by a campaign of publicity, that an incidental effect of that campaign may be the infliction of some direct injury upon … the party against whom the campaign is directed." *Id.* at 143. Thus, "[t]o hold that the knowing infliction of such injury renders the campaign itself illegal would [ ] be tantamount to outlawing all such campaigns." *Id.* at 143-44.

*Noerr* and the dozens of cases that have followed it require dismissal of all of Plaintiffs' claims, because all of them are grounded in either direct appeals to the relevant governmental decision-makers or appeals made "indirect[ly] … through the media or other avenues," which are equally protected. *Geomatrix*, 82 F.4th at 480. True to its First Amendment roots, *Noerr-Pennington* protection also covers "communications between private parties … so long as they are sufficiently related to petitioning activity." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006); *compare* Compl. ¶ 71 (alleging that Cliffs unsuccessfully sought a meeting with Nippon Steel with the alleged goal of advocating against the Merger), *with Evans Hotels, LLC v. Unite Here Local 30*, 433 F. Supp. 3d 1130, 1146-47 (S.D. Cal. 2020) (defendants' statement to plaintiffs that they "would stop at nothing to prevent [plaintiff's project] from going forward" was "made in the context of petitioning activity" and therefore protected by *Noerr-Pennington*).

The Complaint does not identify ***any*** actions that it claims gives rise to liability other than Defendants' advocacy against the Merger. While Plaintiffs attempt to tar Defendants' petitioning activities as a "campaign of lies, deception, and pressure tactics," Compl. ¶ 58, these labels do not

change the fact that "the antitrust laws regulate business, not politics." *Omni*, 499 U.S. at 377. However Plaintiffs claim they went about doing it, Defendants' "attempt to petition or influence the government to impose an anticompetitive restraint is immune from antitrust action." *Mass. II*, 107 F.3d at 1035.

Nor does it matter that Plaintiffs claim a "conspiracy" and "unlawful agreement." *Noerr* itself concerned similar allegations against a consortium, and accordingly "the *Noerr-Pennington* doctrine … holds that business interests ***may combine*** and lobby to influence the legislative, executive, or judicial branches of government or administrative agencies without violating the antitrust laws, because such activities are protected by the first amendment right of petition." *Eaton v. Newport Bd. of Educ.,* 975 F.2d 292, 298 (6th Cir. 1992) (emphasis added).  Plaintiffs cannot bar any Defendant from petitioning or speaking, either on their own or together.

In short, Defendants cannot be held liable for engaging in a "publicity campaign designed to arouse public disfavor of [the Merger] in order to impair [Plaintiffs'] ability to compete with [Cliffs]." *Session Tank Liners, Inc. v. Joor Mf'g*, 17 F.3d 295, 298 (9th Cir. 1994).  Plaintiffs have pled nothing more.

### 2.    Any Conduct Plaintiffs Argue Is Not Petitioning Activity Necessarily Caused No Injury To Plaintiffs

Straining to avoid *Noerr-Pennington*, Plaintiffs conclusorily assert that Defendants' "unlawful agreement" is "not petitioning activity," and thus Defendants' conduct "is not protected by the *Noerr-Pennington* doctrine." Compl. ¶ 174.  That attempt to avoid dismissal fails.

***First***, as discussed above, Plaintiffs make no allegations of any substantive activity other than advocacy against the Merger and in favor of a different plan for U.S. Steel.  *Noerr-Pennington*'s protections are broad, and Plaintiffs cannot try to parse out protected from non-protected speech on the same topic.  As noted, *Noerr* immunized an alleged "publicity campaign

against the truckers" that used deception "to destroy the goodwill of the truckers, among the public generally and among the truckers' customers particularly."  365 U.S. at 129, 142.

       **Second**, petitioning activity does not lose its protections just because it is joint or pursuant to an agreement.  Again, *Noerr* is directly on-point.  *See id.* at 135 ("the Sherman Act does not prohibit two or more persons from associating together in an attempt to" petition the government).  Neither coordination nor deception affected the petitioners' constitutional protections.

       **Third**, Plaintiffs have not alleged any harm ***other than*** the consequences of the President's decision to block the Merger or Defendants' purported efforts to procure that decision.  In deciding whether conduct is immunized under *Noerr-Pennington*, courts consider "(1) what is the harm that the plaintiff alleges it suffered?; and (2) is that harm the proximate result of governmental action or private conduct?"  *Mass. I*, 937 F. Supp. at 439.  Where the alleged harm "results from governmental action, no antitrust liability will lie."  *Id.*  Where a plaintiff alleges harm from both private conduct and governmental action, "no liability will attach to the private conduct if the harm associated with that conduct is merely incidental to the harm associated with the governmental action."  *Id.* (citing *Noerr*, 365 U.S. at 143).  And "even if the anticompetitive restraint results directly from private action, it is still immune if it is an incidental effect of a legitimate attempt to influence governmental action."  *Mass. II*, 107 F.3d at 1035; *see also A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 251 (3d Cir. 2001) (parties are "immune from antitrust liability" when the alleged injuries are "caused by the act of petitioning or are caused by government action which results from the petitioning").

       In this case, the Complaint makes clear that "the true harm alleged [is] one born from state action."  *Geomatrix*, 82 F.4th at 482.  Plaintiffs do not plead that Defendants somehow thwarted the Merger or inflicted any other injury independently of the Order blocking the Merger or the

petitioning activity that Plaintiffs claim led to that Order.  *See, e.g.*, Compl.  ¶¶ 14, 30, 80, 95, 166, 171, 269, 273 (alleging losses from the Merger not closing and from the alleged "rumor campaign" against it).  To the contrary, Plaintiffs have told the D.C. Circuit they "will be able to consummate the transaction" if the President's Order is reversed.  *U.S. Steel Co. v. CFIUS*, No. 25-1004, Petition for Review (Jan. 6, 2025), at 12.  It thus follows that "the source of the complained of injuries" is the White House's decision to block the Merger.  *Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Memorial Hosp.*, 185 F.3d 154, 160 (3d Cir. 1999).

Because the relevant "harm" was "the proximate result of governmental action," rather than "private conduct," Plaintiffs cannot state a claim.  *Mass. I*, 937 F. Supp. at 440; *see Mass. II*, 107 F.3d at 1038 (concluding that "immunity is proper" because defendant "engaged in petitioning activity, and the stigma injury which [plaintiff] suffered was incidental to that activity").

### 3.    As A Matter Of Law, The "Sham" Exception To *Noerr-Pennington* Does Not Apply

Plaintiffs also attempt to evade *Noerr-Pennington* by invoking the so-called "sham" exception.  *See* Compl. ¶¶ 176-95.  The Complaint forecloses this argument.

"[A]ctivity ostensibly directed towards influencing governmental action does not qualify for *Noerr* immunity if it is a mere sham to cover an attempt to interfere directly with the business relationships of a competitor."  *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51 (1993) ("*PRE*") (cleaned up).  The exception "has a very narrow scope," *VIM, Inc. v. Somerset Hotel Ass'n*, 19 F. Supp. 2d 422, 426 (W.D. Pa. 1998), applying only when a party "use[s] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon," *Omni*, 499 U.S. at 380.  "A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay."  *Id.*  The Complaint alleges nothing of the sort.

Because the sham exception is so strictly limited, "two things must be true" for it to apply. *In re Merck Mumps Vaccine Antitrust Litig.*, 2024 WL 4432076, *5 (3d Cir. Oct. 7, 2024). First, Plaintiffs must show that Defendants' petitioning activities are "objectively baseless in the sense that no reasonable petitioner could realistically expect success on the merits." *Id.*; *see PRE*, 508 U.S. at 65 (analogizing objectively baseless conduct to warranting sanctions under Rule 11). Second, "if [the] challenged [petitioning activity] is objectively meritless," then the court "may … examine the litigant's subjective motivation." *PRE*, 508 U.S. at 60.

The Court need only consider the first, objective prong of the "sham" test to reject the exception. Far from being "objectively baseless," the positions Plaintiffs ascribe to Defendants were also advanced by dozens of public figures. *See* Dkt. 52-2. And the Court need not weigh reasonableness, because as a matter of law, a "winning petition is by definition a reasonable effort at petitioning … and therefore not a sham." *PRE*, 508 U.S. at 60 n.5. That is exactly what Plaintiffs allege: that Defendants ***successfully*** petitioned the government into blocking the Merger. *See, e.g.*, Compl. ¶ 19 ("Defendants also worked to prevent the Merger by subverting the U.S. government's review of the transaction."); *id.* ¶ 22 (alleging that Defendants successfully lobbied "the most ardent opponent of the Merger on CFIUS" who ultimately "provided President Biden with the opportunity to issue an executive order blocking the Merger."); *id.* ¶ 23 ("The CFIUS review culminating in President Biden's January 3, 2025 decision to block the Merger was, as Defendants worked to ensure, lawless."). Plaintiffs' histrionic allegations that government action was "unlawful," *e.g.*, *id.* ¶ 177, are irrelevant, because the Supreme Court has declined to recognize an exception to *Noerr-Pennington* where a plaintiff alleges "corruption of the governmental process," nor a "conspiracy" exception that "would apply when government officials conspire with a private party to employ government action as a means of stifling competition," *Omni*, 499 U.S. at 376-

11

77, 382.

At base, there is no allegation that any governmental ***process***, as opposed to the ***outcome*** of the President's review, injured Plaintiffs.  "Liability for injuries caused by [ ] state action is precluded even where it is alleged that a private party urging the action did so by bribery, deceit, or other wrongful conduct that may have affected the decision making process." *Armstrong*, 185 F.3d at 162.  The sham exception cannot rescue any of the claims at issue from dismissal.

## II.      THE ANTITRUST CONSPIRACY CLAIMS FAIL TO STATE A CLAIM

### A.      Plaintiffs Do Not Plausibly Allege An Antitrust Conspiracy Between Cliffs, Mr. Goncalves, And Mr. McCall

Because "Plaintiffs … fail[] to adequately allege the agreement element of their Section 1 and Section 2 [conspiracy] claims," (Counts 1 and 4, respectively), those claims must be dismissed. *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 257 (3d Cir. 2010). To adequately allege a conspiracy, the Complaint must offer "enough factual matter" to make it "plausible" that Defendants engaged in "some form of concerted action"—that is, "a meeting of minds or a conscious commitment to a common scheme." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315, 320 (3d Cir. 2010).  Beyond disregarding "conclusory allegation[s] of agreement" and "bare assertion[s] of conspiracy," a court's evaluation of an antitrust claim asks if it sets forth facts "plausibly suggesting"—"not merely consistent with"—an actual agreement between the Defendants. *Twombly*, 550 U.S. at 556-57.  Moreover, those facts must be "adequate" to show why "parallel conduct that could just as well be independent action" is actually more likely to reflect a secret, illegal conspiracy.  *Id.*  The Complaint does not come close to meeting this standard, so Counts 1 and 4 should be dismissed.

#### 1.      The Complaint Lacks Direct Evidence Of A Conspiracy

Antitrust conspiracy claims must be supported by either "direct evidence of conspiracy" or "circumstantial evidence" that "indicate[s] the existence of an actual, manifest agreement not to

compete." *See Valspar Corp. v. E.I. Du Pont de Nemours & Co.*, 873 F.3d 185, 192 n.2, 198 n.10 (3d Cir. 2017). The Complaint has neither.

To prevail on a direct evidence approach, a complaint must offer "smoking gun" evidence of a conspiracy. *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 844 F. Supp. 2d 571, 593-94 (E.D. Pa. 2012). Direct evidence "must be 'explicit and require no inferences to establish'" the existence of a conspiracy. *Id.* at 593 (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999)). Only specific facts showing "a time or place that any actual agreement … occurred" will suffice. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225-26 (3d Cir. 2011).

Nothing like that can be found in the Complaint. Plaintiffs' purported conspiracy is not defined by facts, so its boundaries are shifting and amorphous. Plaintiffs do not try to allege the "place" of the alleged agreement, and cannot specify its time "except in general terms," *id.* at 226, stating only that it "dates back to at least 2020" and "was struck no later than August 2023," Compl. ¶ 175. This "at least" three-year timeframe precludes any direct allegation of an agreement because it "makes no claims as to when the defendants actually formed the conspiracy." *In re Bath & Kitchen Fixtures Antitrust Litig.*, 2006 WL 2038605, *5 (E.D. Pa. July 19, 2006) (dismissing allegations that alleged conspiracy "was carried out over an approximately four year time period"). Plaintiffs are shifty about "the specific parties to the agreement" as well. *Burtch*, 662 F.3d at 226. There is no explanation whatsoever as to how or when Mr. McCall, who did not become USW International President until "September 2023," Compl. ¶ 37, joined a conspiracy entered into "no later than August 2023," *id.* ¶ 175. Nor is there even a consistent story about what these alleged conspirators agreed to do for one another. Plaintiffs flatly admit that the idea that Mr. McCall "has been promised benefits by Cliffs" is nothing more than an "inference." *Id.* ¶ 77. As a matter of law, this cannot be direct evidence of a conspiracy. *Baby Food*, 166 F.3d at 118.

The sole piece of documentary evidence that Plaintiffs claim reveals "an agreement" is an August 2023 letter by the former International President of the USW "'unequivocally endors[ing]' Cliffs' bid" for U.S. Steel.  Compl. ¶ 47; *see also* Dkt. 52-3 (the letter).  Contrary to Plaintiffs' misrepresentations, the letter simply announced the USW's exercise of an express right under its Basic Labor Agreement with U.S. Steel to assign its right to bid for U.S. Steel to Cliffs.  *See* Compl. ¶ 51.  Plaintiffs' claim that the "agreement" they imagine is "wholly separate from any basic labor agreement," Compl. ¶ 201, either ignores the nature of the letter or takes it out of consideration altogether, leaving Plaintiffs with nothing even resembling direct evidence of a conspiracy.

In any event, the August 2023 letter was not signed by ***any*** of the Defendants, and the Complaint alleges no meetings between them, much less actual evidence of a meeting of the minds on a plot.  Even complaints that allege "at least 27 … telephone conversations between the original Defendants" and "highly-secretive weekly meetings of formal groups" are properly dismissed for "fail[ing] to plead direct evidence of an agreement" if they cannot define the who, what, where, and when of a conspiracy.  *Burtch*, 662 F.3d at 225-26.  There is no direct evidence here.

### 2.    The Complaint Lacks Circumstantial Evidence Of A Conspiracy

The Complaint similarly does not "contain[] allegations of circumstantial evidence" sufficient "to plausibly show the existence of an agreement."  *Id.* at 226.  An antitrust conspiracy premised upon circumstantial evidence must "tend[] to exclude the possibility that the [alleged co-conspirators] were acting independently."  *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984).  For this reason, in assessing circumstantial evidence, "[t]he 'basic rule' is 'that the inference of a conspiracy is *always* unreasonable when it is based solely on parallel behavior that can be explained as the result of the independent business judgment of the defendants.'"  *Ins. Brokerage*, 618 F.3d at 322 n.20.

This is a textbook case of that basic rule.  From the Complaint itself, it is readily apparent why Cliffs, "the only major U.S. steelmaker operating only unionized assets after U. S. Steel invested in a non-unionized mini-mill," Compl. ¶ 239, and Mr. McCall, "the International President of the USW," which "is North America's largest industrial union" and represents "employees of U. S. Steel, NSC, and Cliffs," *id.* ¶¶ 37-38, would both favor Cliffs acquiring U.S. Steel over Nippon Steel doing so.  Cliffs negotiated to purchase U.S. Steel for months, which drove Nippon Steel to raise its own bid to top Cliffs' offer by $1/share.  *See id.* ¶¶ 45-55.  Mr. McCall is no doubt aware that Nippon Steel's more than 100,000 worldwide employees include barely 600 steelworkers represented by the USW, just 15% of Nippon Steel's diminutive American workforce.  *Id.* ¶ 33.  The Complaint offers no reason to disregard the straightforward explanation laid out in the August 2023 letter: "The USW feels that Cliffs is the single steel producer in the best position to ensure that U.S. based manufacturing remains strong in this country with the support of the USW and its represented workforce." Dkt. 52-3.  These are "obvious alternative[s]" to an illegal conspiracy that easily explain Defendants' positions, which means the Complaint does not plead circumstantial evidence of an antitrust conspiracy.  *Twombly*, 550 U.S. at 567-68.  Plaintiffs' allegations at most show the Defendants had a "similar motive" to oppose the deal; they "do not provide a 'reason to infer that [Defendants] had agreed among themselves to do what was only natural anyway.'"  *Ins. Brokerage*, 618 F.3d at 350.

In the Third Circuit, a "long-standing line of precedent … consistently acknowledges the requirement of pleading conduct against interest" to show an antitrust conspiracy.  *TruePosition*, 844 F. Supp. 2d at 596-97.  Interpreting vigorous efforts to prevail in the marketplace as circumstantial evidence of an antitrust conspiracy "risk[s] punishing-and thus discouraging-the pro-competitive conduct that the antitrust laws are designed to promote and protect."  *King Drug*

*Co. of Florence, Inc. v. Cephalon, Inc.*, 2014 WL 2813312, *5 (E.D. Pa. June 23, 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986)). That is particularly true in a case like this one brought by a defendant's rivals. Enjoining Cliffs' ability to criticize a merger or present a better alternative would hamstring the competitive process, leaving U.S. Steel's management better able to only deal with their preferred friends at Nippon Steel. Cliffs, "an efficient, vigorous, aggressive competitor," "is not the villain antitrust laws are aimed at eliminating." *United States v. Syufy Enters.*, 903 F.2d 659, 668-69 (9th Cir. 1990). Without circumstantial evidence of a conspiracy, the claims must be dismissed.

### B. Plaintiffs Do Not Plausibly Allege Antitrust Standing

The antitrust claims at issue also independently fail "for lack of antitrust standing, which is a threshold requirement in any antitrust case." *Phila. Taxi Ass'n v. Uber Techs., Inc.*, 886 F.3d 332, 343 (3d Cir. 2018). To establish antitrust injury, Plaintiffs must demonstrate: "(1) harm of the type the antitrust laws were designed to prevent; and (2) an injury to the plaintiff which flows from that which makes defendants acts unlawful." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010). "Whether antitrust standing exists is a question of law" well-suited for resolution on a motion to dismiss. *Arconic Corp. v. Novelis Inc.*, 2023 WL 5510574, *11 (W.D. Pa. Aug. 25, 2023). Even granting Plaintiffs every inference, the Complaint's allegations establish they have suffered no "antitrust injury," and thus are not the "proper part[ies] to bring a private antitrust action." *Phila. Taxi Ass'n*, 886 F.3d at 343.

### 1. Plaintiffs Have Not Suffered Any Harm Of The Type The Antitrust Laws Were Designed To Prevent

The antitrust laws were not designed to ensure that the world's fourth largest steel producer

is able to acquire this country's third largest steel-producer[6] without having to hear any objections. The "antitrust laws are concerned with the protection of competition, not competitors." *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 398-399 (3d Cir. 2016). Yet all of the alleged injuries here trace back to whether two particular competitors are able to merge or are instead blocked by the government, not any injury to the actual competition between Plaintiffs and Cliffs. The allegation that Nippon Steel is U.S. Steel's preferred source of "beneficial capital and technological infusions," Compl. ¶ 165, does not mean that the antitrust laws have any interest in ensuring that this particular acquisition goes through. To the contrary, even where a defendant ***does*** have the ability to stop a plaintiff from executing its desired business model, that fact alone does not amount to an antitrust injury to competition. *See SEI Glob. Servs., Inc. v. SS&C Advent*, 2022 WL 2356730, *3 (3d Cir. June 30, 2022) (affirming dismissal of antitrust claims where plaintiff "chose to root its business" in a model that was dependent on defendant).

Plaintiffs threaten grave consequences if they do not get what they want. *See, e.g.*, Compl. ¶ 170 (claiming that if the Merger does not go through, "U.S. Steel" may be "broken up," which will "result[] in a loss of competition"). But "they fail to aver any facts suggesting that this is an imminent, realistic possibility"; as such, Plaintiffs' self-serving predictions of "detriment to consumers in the event that [they] are driven out of the market, entirely" are owed no weight. *Phila. Taxi Ass'n*, 886 F.3d at 344 n.9.

### 2. Plaintiffs Have Not Suffered Any Injury That Flows From The Conduct Of Defendants That Plaintiffs Claim Violates Antitrust Laws

Plaintiffs also lack antitrust standing because the sole injury they allege is due to the

---

[6] Nippon Steel is the world's 4th largest steel producer, Cliffs is the 22nd largest, and U.S. Steel is the 24th largest. *2024 World Steel in Figures*, WORLD STEEL ASS'N (May 27, 2024), at 9, https://worldsteel.org/wp-content/uploads/World-Steel-in-Figures-2024.pdf.

President's Order, not the conduct by Defendants that Plaintiffs claim violates the Sherman Act. "[N]o antitrust standing exists when a plaintiff's grievance is caused by a regulatory scheme rather than by the defendant's actions." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 166 (3d Cir. 2017). This is because antitrust law requires that a plaintiff's injury "flow[] from that which makes defendants' acts unlawful" as opposed to from some other source. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

When a governmental decision "preclude[s] competition" in a relevant market, that "regulatory barrier br[eaks] the chain of causation," and renders a plaintiff unable to show "the harm they experienced was … caused by the [defendants'] alleged anticompetitive conduct." *In re Mallinckrodt PLC*, 638 B.R. 57, 75 (Bankr. D. Del. 2021). For all of Plaintiffs' complaints that Defendants "have hamstrung U.S. Steel's ability to compete … by depriving it of [NSC's] competitive boost," and "hampered NSC's ability to enter and expand in U.S. iron and steel markets," Compl. ¶ 172, the obstacle in the Merger's way is the President's Order, not Defendants. *See U.S. Steel Co. v. CFIUS*, No. 25-1004, Petition for Review (Jan. 6, 2025), at 11 (Plaintiffs acknowledging they "will be able to consummate the transaction" if the Order is reversed). "[A]ny injury suffered by [Plaintiffs] did not flow from the defendants' conduct, but rather, from the realities of the regulated environment." *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 265 (3d Cir. 1998). The absence of this element is a further ground to dismiss both conspiracy claims for lack of antitrust standing.

### C.    Plaintiffs' Invocation Of DOJ Antitrust Review Disproves Count 4

Yet another fatal flaw in Plaintiffs' pleading is the absence of any facts showing a "dangerous probability of success" from the alleged conspiracy to monopolize. *V&L Cicione, Inc. v. C. Schmidt & Sons, Inc.*, 403 F. Supp. 643, 651 (E.D. Pa. 1975), *aff'd*, 565 F.2d 154 (3d Cir. 1977). Plaintiffs allege that Cliffs acquiring U.S. Steel is integral to the alleged monopolization

scheme. *See* Compl. ¶¶ 43, 45, 162, 216, 217, 231, 240.  However, their own pleadings allege that there is no dangerous probability of this plan succeeding, because in Plaintiffs' telling "antitrust regulators" would "undoubtedly" hinder the acquisition. *Id.* ¶ 68.  This allegation, while baseless, accidentally reveals a core truth: that any transaction between Cliffs and U.S. Steel could only happen after regulators concluded it did not pose antitrust concerns.  A purported antitrust conspiracy that can only be effectuated through seeking and obtaining antitrust approval from the Department of Justice is no plausible basis for liability at all.

Likewise, Plaintiffs repeatedly invoke past acquisitions by Cliffs as somehow nefarious. *Id.* ¶¶ 24, 27, 44, 99, 100, 102, 104-08, 136, 149, 159, 216-17, 230-31, 238, 240.  But those underlying acquisitions have ***already*** received regulatory clearance.  "[I]t cannot be ignored that the Federal Executive" has "carefully scrutinized" these acquisitions and found them acceptable. *Broad. Music, Inc. v. Columbia Broad. Sys.,* 441 U.S. 1, 13 (1979).

### III.    THE TORTIOUS INTERFERENCE CLAIMS FAIL TO STATE A CLAIM

Under Pennsylvania law, "to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed LLC v. Advanced Surgical Servs., Inc.,* 561 F.3d 199, 212 (3d Cir. 2009).  Plaintiffs fail to plead the second and fourth elements of their interference with contract claim, the first and fifth elements of their interference with prospective contract claim, and the third element of either claim.  These deficiencies require

not just dismissal, but an award of fees and costs under the recently-enacted Pennsylvania Uniform Public Expression Protection Act ("PA-UPEPA").

### A.  Plaintiffs Cannot State A Claim For Tortious Interference With A Contract That Has Not Been Breached

Under Pennsylvania law, "a plaintiff bringing an intentional interference claim must allege breach or nonperformance." *Dommel Props. LLC v. Jonestown Bank & Tr. Co.*, 626 F. App'x 361, 367 (3d Cir. 2015); *see also Charbonneau v. Chartis Prop. Cas. Co.*, 680 F. App'x 94, 99 (3d Cir. 2017) ("[A] defendant is liable for intentional interference with contract only when the defendant induces or otherwise causes a third party not to perform the contract.")[7]; *DeAngelis v. Encompass Home & Auto Ins. Co.*, 2023 WL 3727005, *4 (E.D. Pa. May 30, 2023) ("the second element of a tortious interference with contract claim under Pennsylvania law … requires proof that the defendant caused a third party not to perform a contract"); *Pawlowski v. Smorto*, 588 A.2d 36, 40 (Pa. Super. Ct. 1991) (affirming dismissal of tortious interference claim where plaintiff had not alleged "that the [third party] in any way failed to perform her contract").

The Complaint does not allege that the Merger Agreement, or any other contract, has been breached.  To the contrary, Plaintiffs allege that "[b]oth U. S. Steel and NSC stand ready, willing, and able to perform under the Merger Agreement."  Compl. ¶ 267.  Without this fundamental element, count 8 must be dismissed.  *See, e.g.*, *Glob. Arena, LLC v. Eterpreting, LLC*, 2016 WL 7156396, *2 (E.D. Pa. Dec. 8, 2016) (dismissing claim where "nowhere in the Amended Complaint are there any allegations of fact that [a third party] breached or failed to perform under an existing contract, a pleading requirement for a tortious interference with existing contractual relations claim"); *Dreiling Millennium Tr. II v. Reliant Renal Care, Inc.*, 833 F. Supp. 2d 429, 433-

---

[7]  "[T]he Third Circuit's predictions regarding Pennsylvania state law are binding on this Court absent a decision of the Pennsylvania Supreme Court expressly to the contrary."  *Sansom v. Crown Equip. Corp.*, 880 F. Supp. 2d 648, 656 (W.D. Pa. 2012).

34 (E.D. Pa. 2011) (allegations that a defendant "encouraged" a party to breach are insufficient without an actual "breach or nonperformance of an agreement").

Plaintiffs attempt to plead around this fundamental defect by alleging that Defendants have somehow "ma[de] NSC's performance under the Agreement more expensive and burdensome." Compl. ¶ 268. But tortious interference claims based on increased burden, rather than actual breach, must be dismissed. The Third Circuit has held that such claims are "too speculative and subject to abuse to provide a meaningful basis for a cause of action," and that they are not available under Pennsylvania law. *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63 (3d Cir. 1994); *see Am. Osteopathic Ass'n v. Am. Bd. of Internal Med.*, 555 F. Supp. 3d 142, 150 n.4 (E.D. Pa. 2021) ("Pennsylvania law does not recognize claims making performance of a contract more expensive or difficult.").

The absence of any breached contract also prevents Plaintiffs from pleading the damages element of its tortious interference claim because "[t]he damages at the heart of an intentional interference claim are those that flow from the Plaintiff's loss of 'some benefit to which he was entitled by contract.'" *Dreiling*, 833 F. Supp. 2d at 435 (quoting *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Sup. Ct. 1994)). Plaintiffs have suffered no such damages, and if they did at some point, those injuries would be due to the President's Order, not Defendants' alleged interference. *See* Part II.B.2, above; *see also Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) (recognizing that the Third Circuit and other courts have "rejected claims seeking damages for injuries allegedly caused by the defendants' actions directed to influencing government action").

Because Plaintiffs cannot identify a breached contract or any damages caused by the alleged interference, count 8 must be dismissed.

### B.    Plaintiffs Cannot State A Claim For Tortious Interference With Unnamed Potential Bidders In A Hypothetical Future Sale

Plaintiffs' claims of interference with prospective contractual relations must also be dismissed.  As noted above, this claim requires pleading facts that establish both "the existence of a … prospective contractual or economic relationship between the plaintiff and a third party," and "a reasonable likelihood that the relationship would have occurred but for the defendant's interference." *Acumed*, 561 F.3d at 212.  These pleadings, which imagine unexplained further transactions with Nippon Steel or unnamed "other bidders" if Plaintiffs abandon their proposed Merger, *see* Compl. ¶¶ 276, 281, are far too speculative to state a claim.

Plaintiffs do not identify any "prospective" relationship with the specificity required. Plaintiffs do not identify who the unspecified "other bidders" are.  Compl. ¶¶ 276, 281.  Indeed, according to Plaintiffs, such parties likely do not exist.  *See id.* ¶ 170 ("the universe of non-NSC bidders for U. S. Steel, to the extent it exists at all, is vanishingly thin").  As a result, Plaintiffs have failed to establish "a reasonable probability that ***particular*** anticipated contracts" would have materialized.  *Fresh Made, Inc. v. Lifeway Foods, Inc.*, 2002 WL 31246922, *12 (E.D. Pa. Aug. 9, 2002) (emphasis added); *see also, e.g.*, *Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 578 (E.D. Pa. 2002) (dismissing claim where plaintiff failed to identify "a single past, present or prospective customer … with whom it had a prospective contract which did not finalize because of [d]efendant's actions"); *Jaramillo v. Experian Inf. Sols., Inc.*, 155 F. Supp. 2d 356, 364-65 (E.D. Pa. 2001) (claim dismissed where plaintiff failed to plead the "existence of any specific contract or prospective contract").

To the extent Plaintiffs suggest that Defendants are interfering with a prospective new contract between the Plaintiffs, despite failing to show any interference with the contract that actually exists, this theory is not supported either.  This Court has previously held that the mere

"expectation[] that a historical relationship between [two parties] would lead to another contract … cannot serve as a basis of any likelihood or probability of a prospective contract." *Am. Handiwork, Inc. v. 84 Lumber Co.*, 2021 WL 3666478, *4 (W.D. Pa. Aug. 18, 2021). "The Complaint cites to no pending negotiations or other evidence that [either Plaintiff] contemplated a new contract with [the other] or that the same would have materialized absent [Defendants'] alleged interference." *Id.* Because "a mere historical relationship between parties is not sufficient to show a prospective contractual relationship," the Complaint fails to plead **any** prospective relationship. *BP Envt'l Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 412 (E.D. Pa. 2013).

The Complaint also plainly fails to plead any reasonable probability that any of the relationships it fails to sufficiently identify would have occurred. The Merger Agreement has an exclusivity provision, *see* Dk. 52-9 at Annex A § 6.4, so no "other bidders" even **could** enter into the type of contract Plaintiffs imagine until the current Merger Agreement is terminated. There can be no "objectively 'reasonable likelihood or probability' that the contemplated contract would have materialized" where Plaintiffs' own current contract prohibits it. *Am. Handiwork*, 2021 WL 3666478, at *4. And even if the Court accepted Plaintiffs' implicit invitation to pretend their Merger Agreement does not exist, merely opening a bidding process to unnamed parties does not establish the requisite objective probability of an actual relationship. *See, e.g.*, *Solid Wood Cabinet Co. v. Partners Home Supply*, 2015 WL 1208182, *9 (E.D. Pa. Mar. 13, 2015) ("[b]eing offered the opportunity to bid for work is not sufficient to create a prospective contractual relation"). Count 9 must be dismissed on these grounds as well.

### C.    Plaintiffs Fail To Plead The Absence Of A Privilege Or Justification

Both of Plaintiffs' tortious interference claims require them to plead "the absence of privilege or justification on the part of the defendant." *Am. Handiwork*, 2021 WL 3666478, at *4. For multiple reasons discussed in more detail above, this element of each claim is absent from

the Complaint.

*First*, Defendants have a privilege to speak on matters of public concern and to petition the government. *See* Part I, above. Activity protected by the First Amendment cannot be a basis for a tortious interference claim. *See, e.g.*, *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3rd Cir. 1999); *Baker v. Moon Area Sch. Dist.*, 2018 WL 4057179, *7 (W.D. Pa. Aug. 27, 2018) (dismissing tortious interference claim alleging joint petitioning because "[e]xposing Defendants to liability for their successful … campaign against [plaintiff school board's] policies … would run afoul of the robust protection for political organizing provided by the *Noerr-Pennington* Doctrine"). The claims should be dismissed on this basis.

*Second*, Defendants also have a justification for pursuing their rational economic interests, such that the Third Circuit has repeatedly required courts to "accord substantial deference to defendants whose conduct, despite its conflict with plaintiff's interest, protects an existing legitimate business concern." *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 665 (3d Cir. 1993). The Complaint makes clear that all three Defendants have straight-forward, non-conspiratorial, legitimate business reasons to opposed Plaintiffs' Merger and advocate for an alternative. *See* Part II.A.2, above. Plaintiffs' failure to plead anything other than conclusory denials of this obvious business justification is also fatal. *See, e.g.*, *Wilmington Steel Processing Co. v. Citisteel USA, Inc.*, 2008 WL 5975419 (Pa. Com. Pl. Nov. 4, 2009) (entering judgment against tortious interference claim because "[o]ne's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors"), *aff'd*, 998 A.2d 999 (Pa. Super. Ct. 2010).

### D.    Under PA-UPEPA, Defendants Are Entitled To Their Attorney Fees, Court Costs, And Litigation Expenses

Finally, it is not just the U.S. Constitution that bars Plaintiffs' improper efforts to punish

and stifle speech. Pennsylvania's new law protecting public participation against retributive lawsuits, PA-UPEPA, 42 Pa.C.S.A. § 8340.11 *et seq.*, does as well.  PA-UPEPA immunizes a person's "communication on an issue under consideration or review in a legislative, executive, judicial or administrative proceeding" and "exercise, on a matter of public concern, the rights of freedom of speech." *Id.* § 8340.13.  This is an "immun[ity] from civil liability for a cause of action based on protected public expression" where, as here, a plaintiff has failed to state a Pennsylvania state-law claim. *Id.* § 8340.15(1)(ii); *see also id.* § 8340.13 Uniform Law Cmt. 2 (immunity right is "substantive in nature").   This substantive immunity controls Plaintiffs' state-law claims. *See, e.g.*, *Cooper v. Borough of Wenonah*, 977 F. Supp. 305, 311 (D.N.J. 1997) ("In construing matters of state law in pendant claims … a federal court … is duty-bound to apply the law of the state in which it sits."); *Gok v. Roman Cath. Church*, 550 F. Supp. 3d 221, 329 (E.D. Pa. 2021) ("Because Rule 233.1 is substantive state law and this Court is adjudicating state law claims, Rule 233.1 is applicable under the *Erie* doctrine.").  Like the background Constitutional principles discussed above, *see* Part I, this statute requires dismissal.  *See* 42 Pa.C.S.A. § 8340.14 Uniform Law Cmt. 2 ("[T]he point of the anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights.").

In addition to dismissal, PA-UPEPA entitles Defendants to an award of "attorney fees, court costs, and expenses of litigation jointly and severally against each adverse party that asserted the cause of action." *Id.* § 8340.18(a)(1).  Defendants are prepared to detail those fees, costs, and expenses should the Court dismiss claims pursued against immunized conduct, which it should do for Constitutional, statutory, and common-law reasons.

## **CONCLUSION**

Counts 1, 4, 8 and 9 of Plaintiffs' Complaint should be dismissed with prejudice.

Dated: February 4, 2025

Respectfully submitted,

By:    */s/ William Pietragallo, II*

| | |
|---|---|
| **QUINN EMANUEL URQUHART & SULLIVAN LLP** | **PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI, LLP** |
| Andrew J. Rossman (*pro hac vice*) | William Pietragallo, II (PA ID No. 16413) |
| Steig D. Olson (*pro hac vice*) | Peter St. Tienne Wolff (PA ID No. 208433) |
| Owen F. Roberts (*pro hac vice*) | Matthew R. Barnes (PA ID No. 328771) |
| Mario O. Gazzola (*pro hac vice*) | Quintin DiLucente (PA ID No. 330648) |
| 295 Fifth Avenue | One Oxford Center, 38th Floor |
| New York, NY 10016 | Pittsburgh, PA 15219 |
| (212) 849-7000 (Phone) | (412) 263-1818 (Phone) |
| (212) 849-7100 (Fax) | (412) 263-2001 (Fax) |
| andrewrossmann@quinnemanuel.com | wp@pietragallo.com |
| steigolson@quinnemanuel.com | mrb@pietragallo.com |
| owenroberts@quinnemanuel.com | psw@pietragallo.com |
| mariogazzola@quinnemanuel.com | qd@pietragallo.com |
| *Attorneys for Defendants Cleveland-Cliffs Inc. and Lourenco Goncalves* | *Attorneys for Defendants Cleveland-Cliffs Inc. and Lourenco Goncalves* |

26