# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES STEEL CORPORATION,
NIPPON STEEL CORPORATION, and
NIPPON STEEL NORTH AMERICA, INC.,

                    Plaintiffs

    vs.

CLEVELAND-CLIFFS INC., LOURENCO
GONCALVES, and DAVID McCALL,

                    Defendants.

Civil Action No. 2:25-cv-15

Hon. Marilyn J. Horan

**DEFENDANTS CLEVELAND-CLIFFS INC. AND LOURENCO GONCALVES' REPLY
BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS 1, 4, 8, & 9 AND FOR
AN AWARD OF ATTORNEY FEES, COURT COSTS, AND LITIGATION EXPENSES**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.................................................................................. 1

ARGUMENT .......................................................................................................... 3

I.     PLAINTIFFS STILL CANNOT PLEAD AROUND THE FIRST AMENDMENT ............. 3

      A.    Speech About The Fate Of The American Steel Industry Still Cannot Give Rise To Liability, And Plaintiffs Attack Nothing More .................................................. 3

      B.    Plaintiffs Cannot Avoid *Noerr-Pennington* By Ignoring Most Of Their Complaint .................................................................................................................. 6

II.    THE ANTITRUST CONSPIRACY CLAIMS ARE STILL MISSING NECESSARY ELEMENTS ............................................................................................................. 8

      A.    The Alleged "Harm" Is Still Not An Antitrust Injury And Still Not Caused By Defendants .............................................................................................................. 8

      B.    The Alleged "Agreement" Is Still Not A Conspiracy To Restrain Trade Or Monopolize ............................................................................................................ 11

III.   THE TORTIOUS INTERFERENCE CLAIMS ARE STILL MISSING NECESSARY ELEMENTS ........................................................................................................... 13

      A.    The Merger Agreement Still Has Not Been Breached, So As A Matter Of Law It Has Not Been Interfered With ................................................................................ 13

      B.    Plaintiffs' New Prospective Contract Theory About Post-Merger Investments Is Neither Pleaded Nor Viable .................................................................................. 15

      C.    Plaintiffs Still Have No Basis To Avoid PA-UPEPA Fee Shifting ..................... 15

CONCLUSION...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
   561 F.3d 199 (3d Cir. 2009) .................................................................15

*Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Memorial Hosp.*,
   185 F.3d 154 (3d Cir. 1999) ...................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007) ............................................................................11

*BIEC Int'l, Inc. v. Glob. Steel Servs., Ltd.*,
   791 F. Supp. 489 (E.D. Pa. 1992) ........................................................14

*Bolger v. Youngs Drug Prods. Co.*,
   463 U.S. 60 (1983) ................................................................................4

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011) ...........................................................11, 12

*California Motor Transport Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972) ..............................................................................7

*Callahan v. A.E.V., Inc.*,
   182 F.3d 237 (3d Cir. 1999) ...................................................................9

*Charbonneau v. Chartis Prop. Cas. Co.*,
   680 F. App'x 94 (3d Cir. 2017) ............................................................14

*City of Columbia v. Omni Outdoor Advert., Inc.*,
   499 U.S. 365 (1991) ..............................................................................8

*City of Pittsburgh v. W. Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1998) .............................................................9, 10

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) ............................................................................12

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   313 F. Supp. 3d 931 (N.D. Ill. 2018) ...................................................12

*In re Domestic Drywall Antitrust Litig.*,
   2019 WL 3254090 (E.D. Pa. July 19, 2019) ........................................11

*Dommel Props. LLC v. Jonestown Bank & Tr. Co.*,
  626 F. App'x 361 (3d Cir. 2015) ...................................................................13

*Dreiling Millennium Tr. II v. Reliant Renal Care, Inc.*,
  833 F. Supp. 2d 429 (E.D. Pa. 2011) .............................................................14

*Dunkin Donuts Franchising LLC, v. Claudia III, LLC*,
  2014 WL 12618097 (E.D. Pa. Dec. 5, 2014) ..................................................15

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ..........................................................................................6

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
  821 F.3d 394 (3d Cir. 2016) ..............................................................................7

*ES Dev., Inc. v. RMW Enterps., Inc.*,
  939 F.2d 547 (8th Cir. 1991) .............................................................................5

*Evans Hotels, LLC v. Unite Here Local 30*,
  433 F. Supp. 3d 1130 (S.D. Cal. 2020) .............................................................7

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
  663 F.2d 253 (D.C. Cir. 1981) ...........................................................................7

*In re Flat Glass Antitrust Litig.*,
  385 F.3d 350 (3d Cir. 2004) ............................................................................11

*FTC v. Superior Court Trial Lawyers Ass'n*,
  493 U.S. 411 (1990) ..........................................................................................5

*In re Generic Pharms. Pricing Antitrust Litig.*,
  338 F. Supp. 3d 404 (E.D. Pa. 2018) .............................................................11

*Host Int'l, Inc. v. MarketPlace, PHL, LLC*,
  32 F.4th 242 (3d Cir. 2022) .........................................................................9, 10

*Howard Hess Dental Lab'vs. Inc. v. Dentsply Int'l, Inc.*,
  602 F.3d 237 (3d Cir. 2010) ............................................................................10

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ......................................................................11, 13

*Int'l Constr. Prods. LLC v. Caterpillar Inc.*,
  2016 WL 4445232 (D. Del. Aug. 22, 2016) ...................................................12

*Kerwin v. Casino*,
  802 F. App'x 723 (3d Cir. 2020) .....................................................................13

*Klatch-Maynard v. Sugarloaf Twp.*,
  2010 WL 5789390 (Nov. 8, 2010)...........................................................................6

*Lifewatch Services Inc. v. Highmark Inc.*,
  902 F.3d 323 (3d Cir. 2018)..................................................................................11

*Mass. Sch. of L. at Andover, Inc. v. Am. Bar. Ass'n*,
  937 F. Supp. 435 (E.D. Pa. 1996), *aff'd*, 107 F.3d 1026 (3d Cir. 1997).............3, 6

*McDonald v. Smith*,
  472 U.S. 479 (1985).................................................................................................6

*In re Merck Mumps Vaccine Antitrust Litig.*,
  2024 WL 4432076 (3d Cir. Oct. 7, 2024).................................................................7

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984)................................................................................................13

*Nat'l Soc'y of Pro. Eng'rs v. United States*,
  435 U.S. 679 (1978).................................................................................................5

*In re NCAA Student-Athlete Name & Likeness Litig.*,
  2010 WL 5644656 (N.D. Cal. Dec. 17, 2010)...........................................................5

*Norfolk Monument Co. v. Woodlawn Mem'l Gardens, Inc.*,
  394 U.S. 700 (1969)................................................................................................12

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993)...................................................................................................7

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  614 F.3d 57 (3d Cir. 2010)..............................................................................8, 9, 10

*Ride the Ducks of Phila., LLC v. Duck Boat Tours, Inc.*,
  2005 WL 1583514 (3d Cir. 2005)...........................................................................14

*Rossi v. Standard Roofing, Inc.*,
  156 F.3d 452 (3d Cir. 1998)...................................................................................12

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*,
  401 F.3d 123 (3d Cir. 2005)....................................................................................5

*Schachar v. Am. Acad. of Opthalmology, Inc.*,
  870 F.2d 397 (7th Cir. 1989) (Easterbrook, J.)..................................................6, 13

*SecureInfo Corp. v. Bukstel*,
  2003 WL 21961370 (E.D. Pa. May 8, 2003).........................................................14

*Snyder v. Phelps*,
    562 U.S. 443 (2011)..................................................................................3, 4

*Steward Health Care Sys., LLC v. Blue Cross & Blue Shield of R.I.*,
    311 F. Supp. 3d 468 (D.R.I. 2018)........................................................11

*Tri-State Training & Safety Consulting, LLC v. Markawicz*,
    2015 WL 5116754 (E.D. Pa. Aug. 28, 2015) .......................................15

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
    844 F. Supp. 2d 571 (E.D. Pa. 2012) ....................................................12

*TYR Sport Inc. v. Warnaco Swimwear Inc.*,
    679 F. Supp. 2d 1120 (C.D. Cal. 2009) ..................................................5

*U.S. Borax Inc. v. Zamek*,
    2019 WL 13393064 (E.D. Pa. July 26, 2019)........................................14

*U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*,
    898 F.2d 914 (3d Cir. 1990)....................................................................4

*In re Wellbutrin XL Antitrust Litig.*,
    868 F.3d 132 (3d Cir. 2017)....................................................................9

*West Penn Allegheny Health Sys., Inc. v. UPMC*,
    627 F.3d 85 (3d Cir. 2010)....................................................................12

## <u>Constitutional Provisions</u>

First Amendment .......................................................................... *passim*

## <u>Statutes</u>

42 Pa.C.S.A. § 8340.18(a)(1).........................................................15

## PRELIMINARY STATEMENT

The potential purchase of a major American steel manufacturer by a foreign company with a history of trade violations and other harmful practices is an important matter of public concern. That is no doubt why, in the weeks since Plaintiffs have sued Defendants for allegedly "subverting the U.S. government's review" of their proposed Merger, Compl. ¶ 19, Plaintiffs have been on an all-out, but unsuccessful, campaign to have the new President reverse the former President's national security decision.[1]  Cliffs' opening brief ("Br.") established that the First Amendment rejects Plaintiffs' hypocritical attack on Defendants' speech and petitioning, which offend neither the Sherman Act nor Pennsylvania's tortious interference law.  Plaintiffs' opposition brief ("Opp.") attempts to recast the Complaint's theories, but solves none of these fatal flaws.

No liability for speech on matters of public concern.  Plaintiffs have no response to the First Amendment principle that speech on a matter of public concern cannot be the basis for an antitrust or tortious interference claim, nor any argument that the Merger is not a topic of public concern.  When Plaintiffs histrionically allege that Cliffs "waged war" on the Merger, they offer page after page of *quotes*, and not a single *action*.  Opp. 8-13.  The fact that the 285-paragraph Complaint does not allege a single action by Cliffs other than speech requires dismissal.

No liability for petitioning campaigns under *Noerr-Pennington.*  Plaintiffs are right to run from the core theory they pled, but wrong to think they can cabin protected petitioning conduct so narrowly that part of their Complaint survives.  Plaintiffs chose to allege a unified campaign "culminating in President Biden's January 3, 2025 decision to block the Merger," Compl. ¶ 23, and precedent dating back to *Noerr* forbids imposing liability for actions related to petitioning. Plaintiffs cursorily argue for the "sham exception," but by its basic definition it does not apply

---

1   *E.g.*, U.S. Steel: "Thank you, President Trump, for your interest in a thriving future for U. S. Steel. @POTUS @realDonaldTrump" (Feb. 8, 2025), https://t.co/2tNPvNyUr4 (with picture).

where Plaintiffs complain about the *outcome* of CFIUS review that Defendants did not initiate.

    <u>No "antitrust injury" from a Merger blocked only by the government.</u>  Plaintiffs admit that "President Biden's January 3, 2025 decision to block the Merger," Compl. ¶ 23, is the only thing preventing their sale from closing.  As the Third Circuit has made clear in precedent that Plaintiffs simply ignore, this means there is no antitrust injury attributable to Defendants' action.  The fact that Plaintiffs agreed to their Merger over Defendants' strident disapproval shows that Defendants have imposed no economic coercion, exclusion from the markets, or other cognizable injury.  And Plaintiffs' preference for this deal over others is not a "harm" that the antitrust laws credit.

    <u>No "antitrust conspiracy" from Defendants each favoring Cliffs' bid.</u>  Plaintiffs confuse the fact that all Defendants agree that Cliffs is the best buyer for U.S. Steel with an agreement that could violate the Sherman Act.  No law forbids Defendants from advocating for the deal that they each believe best serves their interests, much less requires Defendants to speak in favor of Plaintiffs' Merger.  And extensive precedent since *Twombly* requires dismissing conspiracy claims based on nothing more than two parties reaching the same conclusion and working to advance it.

    <u>No tortious interference with the never-breached Merger Agreement.</u>  Plaintiffs cannot argue that the Merger Agreement has been breached, so they argue that perhaps one of them will breach it in the future and that it has (in some unquantified way) become harder to perform.  The Third Circuit has rejected these theories as insufficient to state this claim.

    <u>No tortious interference with a new theory about post-Merger investments.</u>  Plaintiffs cannot defend the prospective contract theory they pled, which was about a potential sale after the Merger collapses, so they change it to be about a potential investment after the Merger succeeds.  It is too late to change theories, and in any case that does not describe a prospective *contract*.

    Plaintiffs had to refute ***all*** these points to see this motion denied; they did not counter ***any***.

## ARGUMENT

I.    **PLAINTIFFS STILL CANNOT PLEAD AROUND THE FIRST AMENDMENT**

 A.    **Speech About The Fate Of The American Steel Industry Still Cannot Give Rise To Liability, And Plaintiffs Attack Nothing More**

The First Amendment principles at issue are straight-forward.  Speech "deals with matters of public concern" if it "can be fairly considered as relating to any matter of political, social, or other concern to the community" or "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."  *Snyder v. Phelps*, 562 U.S. 443, 453 (2011).  And because "the Constitution trumps the Sherman Act," protected speech "cannot be the basis for antitrust liability." *Mass. Sch. of L. at Andover, Inc. v. Am. Bar. Ass'n*, 937 F. Supp. 435, 443 (E.D. Pa. 1996) ("*Mass. I*"), *aff'd*, 107 F.3d 1026 (3d Cir. 1997); *see also Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs., Inc.*, 175 F.3d 848, 860 (10th Cir. 1999) ("The First Amendment does not allow antitrust claims to be predicated solely on protected speech."). Similarly, "the First Amendment … can serve as a defense in state tort suits."  *Snyder*, 562 U.S. at 451.  So all the Court needs to determine is whether the "conduct" alleged in the Complaint is speech about a public concern.  As Defendants showed (Br. 2-5), it is.

Plaintiffs flail against this basic Constitutional tenet, arguing that the speech they challenge is not protected because it is "commercial," that the First Amendment applies less to interviews about the American steel industry than to anti-gay rights protests at military funerals, and that the Complaint alleges more than speech.  *See* Opp. 14-18.  They are wrong on every count.

First, Plaintiffs' assertion that Defendants' speech is "unprotected" because it is "false or unlawful commercial speech" (Opp. 16) is fundamentally wrong.  Plaintiffs make no actual argument to support this claim, because less-protected "commercial speech" comes "generally in the form of a commercial advertisement for the sale of goods and services."  *U.S. Healthcare, Inc.*

*v. Blue Cross of Greater Phila.*, 898 F.2d 914, 933 (3d Cir. 1990). A three-part test determines whether speech is commercial: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Id.* Here, only the third factor is even arguably present, and "the fact that [a defendant] has an economic motivation … would clearly be insufficient by itself to turn the materials into commercial speech." *Bolger v. Youngs Drug Prods.*, 463 U.S. 60, 67 (1983).

Second, Plaintiffs also cannot distinguish away prior cases (Opp. 16-17 & n.8) on the grounds that the speech was on different topics and the dismissed claims were not antitrust or tortious interference. Speech on ***any*** "subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public" is "speech on public issues" that "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder*, 562 U.S. at 452-53. The sale of U.S. Steel, and its implications on the domestic steel industry and union labor, is a prominent news story that plainly meets this standard. Speaking out about this topic cannot be the basis for a claim under state tort or federal antitrust law.

Third, Plaintiffs cannot recast the speech that they catalog as mere evidence of some other agreement (Opp. 14-16) because there is nothing more alleged. Plaintiffs' opposition makes clear what was already apparent from the Complaint: that they rely on ***nothing other than Defendants' speech***. Their recitation of the ways in which Cliffs allegedly "waged war" on Plaintiffs is nothing but quotes to the media, investors, or Plaintiffs themselves. Opp. 8-12. Their repetition that the USW "unequivocally endorse[d]" Cliffs (Opp. 2, 6, 29, 30) proves the point, as an endorsement is the epitome of non-coercive expression. And their misrepresentations about a "de facto veto power" (Opp. 2, 6, 17, 24, 29, 30, 42, 45) are nothing more than Cliffs stating its understanding of the USW's contract with U.S. Steel, which was subsequently addressed in arbitration. Compl. ¶ 11.

Plaintiffs' pleadings are thus miles away from cases involving an actual course of concerted economic conduct that also included speech about the same topic.[2]  The fact that speech does not immunize actual conduct does not mean that Plaintiffs can sue over speech alone.  This case is instead directly controlled by *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123 (3d Cir. 2005), which Plaintiffs do not even cite.  In that case, where the defendants allegedly "conspir[ed] to induce government architects to specify [their] product" by "telling architects that [plaintiff's product] posed a fire hazard under fire safety codes," there was no antitrust violation even though the plaintiffs had established "the requisite element of concerted action." *Id.* at 125-26, 129.  That was because, in *Santana Products* as here, the plaintiffs failed to allege any actual "coercive measures" that cut them out of the market. *Id.* at 132.  Even if there had been a coordinated, deceitful, and successful campaign to undermine a competitor's position, "there has been no restraint of trade," just "classic competition on the merits." *Id.* at 131, 133.

Plaintiffs run into the exact same problem when they allege that the purported "illegal agreement *is* the anticompetitive restraint" (Opp. 16) without pleading any non-speech means that Defendants have used to restrain Plaintiffs from doing ***anything***.  An alleged agreement to speak out against an ill-conceived merger cannot ground a claim.  Plaintiffs allege no boycott, no refusal to deal, no price-fixing, no territory dividing, no restraint of any kind—nothing other than persuasive speech.  Their proposed injunction, which does not proscribe any specific conduct ***other***

---

[2]  *See* Opp. 15, 17 (citing *FTC v. Superior Ct. Trial Lawyers Ass'n*, 493 U.S. 411, 422-23, 430-32 (1990) (boycott to restrict supply); *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 683-84 & n.5 (1978) (adoption and enforcement of professional code prohibiting competition); *ES Dev., Inc. v. RMW Enters., Inc.*, 939 F.2d 547, 555-56 (8th Cir. 1991) (joint exercise of contract rights to prevent competitor from entering the market); *In re NCAA Student-Athlete Name & Likeness Litig.*, 2010 WL 5644656, *2, *4-5 (N.D. Cal. Dec. 17, 2010) (group boycott and refusal to deal); *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1128-32 (C.D. Cal. 2009) (agreement to "exclude or limit" competitors' products by "threaten[ing] athletes who chose to wear" them with exclusion)).

*than speech*, is further proof.  *See* Dkt. 84-6.  "There can be no restraint of trade without a restraint,"

*Schachar v. Am. Acad. of Opthalmology, Inc.*, 870 F.2d 397, 397 (7th Cir. 1989) (Easterbrook, J.),

and "[w]hen an association merely states its position, and a company is stigmatized because of that

statement, there is no basis for antitrust liability."  *Mass. I*, 937 F. Supp. at 444.[3]

### B.    Plaintiffs Cannot Avoid *Noerr-Pennington* By Ignoring Most Of Their Complaint

Plaintiffs also fail to avoid dismissal under *Noerr-Pennington*'s protection for petitioning

activity.  They seek to do so largely by running from the crux of their Complaint, asserting now

(Opp. 23-24) that they do not seek liability related to the blocking of their Merger.  But Plaintiffs

plead themselves out of court by alleging a "coordinated campaign … to kill the Merger," Opp. 8,

which "culminat[ed] in President Biden's January 3, 2025 decision to block the Merger,"

Compl. ¶ 23.  These allegations of a single conspiracy inextricably tied to constitutionally-

protected petitioning activity must be dismissed in their entirety.

In *Noerr*, the Supreme Court rejected antitrust claims premised on a "publicity campaign,"

even where its aim was not just to directly petition government officials, but also to "create an

atmosphere of distaste for the truckers among the general public, and to impair the relationships

existing between the truckers and their customers."  *E. R.R. Presidents Conf. v. Noerr Motor*

*Freight, Inc.*, 365 U.S. 127, 129 (1961).  As subsequent courts have held, to protect petitioning,

any "effect emanat[ing] from [a defendant's] general publicity campaign" must be "nonactionable

---

[3]   Plaintiffs attempt to distinguish these cases (Opp. 17) as not involving agreements.  But two
voices are no more properly silenced than one.  Just as a party cannot "defeat a claim of immunity
for petitioning activity under the *Noerr-Pennington* doctrine by merely insisting that the
defendants conspired, or agreed with others, to engage in this activity," *Klatch-Maynard v.
Sugarloaf Twp.*, 2010 WL 5789390, *6 (Nov. 8, 2010), *adopted*, 2011 WL 532168 (M.D. Pa. Feb.
8, 2011), Plaintiffs cannot avoid free speech immunity via the same play.  *McDonald v. Smith*, 472
U.S. 479, 485 (1985) ("[T]here is no sound basis for granting greater constitutional protection to
statements made in a petition to the President than other First Amendment expressions.").

under *Noerr* as the incidental result of an effort to influence governmental action." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253, 271 (D.C. Cir. 1981).

Plaintiffs chose to plead a "coordinated public campaign" against the Merger, the ultimate object of which was to persuade CFIUS and/or President Biden to block it. Compl. ¶¶ 22-23, 62. Plaintiffs cannot parse out specific parts of the "campaign" based on the audience. *See Evans Hotels, LLC v. Unite Here Local 30*, 433 F. Supp. 3d 1130, 1146-47 (S.D. Cal. 2020) (defendants' statement to plaintiffs that they "would stop at nothing to prevent [plaintiff's project] from going forward" was "made in the context of petitioning activity" and therefore protected). And if they could, they would have to show that any non-petitioning statements "induced or were likely to induce reasonable reliance by [the market] … [and] that [Plaintiffs] could not have corrected [the] misstatements by supplying the [market] with accurate information." *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 407 n.40 (3d Cir. 2016). The Complaint alleges nothing of the sort.

Plaintiffs also fail in their attempt (Opp. 25-26) to fit their allegations into the "sham" exception to *Noerr-Pennington*. Plaintiffs do not even address the Third Circuit's holding that this exception applies only to activities that are "objectively baseless in the sense that no reasonable petitioner could realistically expect success on the merits." *In re Merck Mumps Vaccine Antitrust Litig.*, 2024 WL 4432076, *5 (3d Cir. Oct. 7, 2024). And they ask (Opp. 26 n.15) the Court to ignore the Supreme Court's 1993 holding that a "winning petition is by definition a reasonable effort at petitioning … and therefore not a sham," *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993),[4] in favor of a case decided decades earlier, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972). Plaintiffs' contention

---

[4] Plaintiffs ask (Opp. 26) to ignore *their own pleading* that Defendants' petitioning succeeded. Compl. ¶¶ 19-23. They make no argument it failed, much less was "objectively baseless."

(Opp. 26 n.16) that *California Motor* holds that "'unethical conduct' is not 'immunized in an adjudicatory context like CFIUS'" is flatly wrong, as the Third Circuit has rejected that reading of *California Motor* and applied *Noerr-Pennington* immunity even to claims that a defendant caused a state agency to deny a plaintiff's application based on false information. *Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Memorial Hosp.*, 185 F.3d 154, 160-64 (3d Cir. 1999). The sham exception applies only to "us[ing] the governmental process itself—as opposed to the *outcome* of that process—as an anticompetitive weapon." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380-82 (1991). Plaintiffs' injury, if any, is solely from the outcome.

## II.    THE ANTITRUST CONSPIRACY CLAIMS ARE STILL MISSING NECESSARY ELEMENTS

### A.    The Alleged "Harm" Is Still Not An Antitrust Injury And Still Not Caused By Defendants

Plaintiffs do not dispute that their antitrust claims must be dismissed unless they have pled both "(1) harm of the type the antitrust laws were designed to prevent; and (2) an injury to the plaintiff which flows from that which makes defendants acts unlawful." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010). But their opposition does not identify any way that they have met either of these requirements, much less both of them.

Taking the second requirement first, the only "injury" that Plaintiffs identify is a supposed "den[ial]" of the "substantial investment"—whether "from NSC or from anyone else"—that they claim U.S. Steel needs "to compete most effectively against Cliffs." Opp. 34. ***But Defendants did not cause that "injury," the President did***. Defendants did not prevent any investment; to the contrary, Plaintiffs settled on their deal ***after*** Defendants allegedly conspired to prevent it. Compl. ¶¶ 12, 49-55 (contending that Plaintiffs "refus[ed] to be bullied" and completed their deal); Dkt. 52-9 at 50 (U.S. Steel chose Nippon Steel out of 5 final proposals, all made in the face of the alleged conspiracy). The undisputed fact that Defendants could not stop the Merger from being

signed, and cannot today stop it from being closed, kills any argument for injury or relief. Plaintiffs cannot complain of being "shut out of the market" for investments when they actively "participated in a competitive bidding process" and executed a Merger Agreement with one another, not Cliffs. *Host Int'l, Inc. v. MarketPlace, PHL, LLC*, 32 F.4th 242, 251-52 (3d Cir. 2022). The only thing "delaying and obstructing the consummation of the merger," Compl. ¶ 167, which "U.S. Steel and NSC stand ready, willing, and able to perform," *id.* ¶ 267, is the Order barring it.

Plaintiffs thus cannot show any injury "which flows from that which makes [defendants'] acts unlawful." *Race Tires*, 614 F.3d at 76. Binding Third Circuit authority, which Plaintiffs do not even cite, holds that a party cannot maintain an antitrust claim "when [its] grievance is caused by a regulatory scheme rather than by the defendant's actions." *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 166 (3d Cir. 2017). That requires dismissal. *See City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 265 (3d Cir. 1998) ("[A]ny injury suffered by [Plaintiffs] did not flow from the defendants' conduct, but rather, from the realities of the regulated environment.").

Plaintiffs' suggestion that there is some other way that they **might theoretically** be prevented from doing their deal if the President's Order **actually** preventing it is lifted (Opp. 36) is not sufficient to state a claim. Antitrust law does not permit courts to "presume ... injury" whenever a plaintiff alleges an "agreement ... harming others in the marketplace." *City of Pittsburgh*, 147 F.3d at 266. Rather, "a plaintiff must prove a causal connection" between the allegedly unlawful conduct "and actual damage suffered." *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 250 (3d Cir. 1999); *see also City of Pittsburgh*, 147 F.3d at 268 ("[A]ntitrust injury must be caused by the antitrust violation—not a mere causal link, but a direct effect."). The only "actual damage" even arguably alleged in the Complaint resulted from the failure of Plaintiffs' Merger—which, again, was concededly not caused by Defendants. *See, e.g.*, Compl. ¶¶ 14-19, 30, 167-68. Indeed,

by admitting that they "will be able to consummate the transaction" if the President's Order is reversed, *U.S. Steel Co. v. CFIUS*, No. 25-1004, Petition for Review (Jan. 6, 2025), at 12, Plaintiffs reject the contention that Defendants are inflicting any injury at all.

Returning to the first prong of antitrust standing, Plaintiffs also fail to address the fact that their Complaint does not allege "harm of the type the antitrust laws were designed to prevent." *Race Tires*, 614 F.3d at 76. Even assuming that Defendants had prevented Nippon Steel from agreeing to invest in U.S. Steel, a plaintiff's "[f]ailure to secure preferred contractual terms is not an antitrust injury." *Host Int'l*, 32 F.4th at 250. Plaintiffs' filings make clear that they each have ready access to the capital markets and potential investments. *See* Compl. ¶¶ 8, 12, 33; Dkt. 52-9 at 50. Even putting aside that the only thing preventing this Merger is a governmental Order that Plaintiffs disclaim any interest in challenging before this Court (Opp. 23-24), an inability to complete this particular Merger, when numerous alternatives remain available, Compl. ¶¶ 12, 165-66, Dkt. 52-9 at 50, is not a "harm of the type the antitrust laws were intended to prevent." *Race Tires*, 614 F.3d at 76. Plaintiffs had to meet two prongs of antitrust standing; they met neither.

Finally, Plaintiffs are wrong to suggest (Opp. 36) that their demand for injunctive relief frees them from the basic requirement of pleading injury. Even ignoring that theories about conduct that "will *postdate* the deal with NSC if that deal is not consummated" (Opp. 1) are rank speculation, a "claim for injunctive relief hinges on whether [Plaintiffs] have established antitrust injury." *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 248 (3d Cir. 2010). Plaintiffs plead no facts establishing any antitrust injury (past, present, or future) ***attributable to Defendants***. *See City of Pittsburgh*, 147 F.3d at 268 ("[T]he plaintiff must still demonstrate that this threatened injury would be ***caused by*** the alleged antitrust violation ...."). A "speculative" injury that "may never occur" cannot support an antitrust claim, no matter the relief sought. *Id.*

B.    **The Alleged "Agreement" Is Still Not A Conspiracy To Restrain Trade Or Monopolize**

The basic holding of *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 567 (2007), is that even at the pleading stage, plaintiffs attempting to allege an antitrust conspiracy cannot ask the Court to ignore an "obvious alternative explanation" for two defendants acting toward the same ends. Plaintiffs dispute whether this requirement even exists (Opp. 32), but it is undoubtedly the law: "allegations of conspiracy are deficient if there are 'obvious alternative explanations' for the facts alleged." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322-23 (3d Cir. 2010).

As all Defendants have repeated, there is an obvious alternative explanation for the alignment between USW and Cliffs:  They each believe that Cliffs acquiring U.S. Steel would be in their best interests (not to mention good for the American steel industry).  *See, e.g.*, Br. 15 (Cliffs explaining its interest); Dkt. 84-4 (USW explaining its interest).  Plaintiffs' pleading that "[s]ince 2020, Cliffs has been the only major U.S. steelmaker operating only unionized assets," Compl. ¶ 239, prevents them from also alleging it is "more likely that the Defendants' parallel conduct was the result of an unlawful agreement than, instead, the result of independent, rational, and wholly lawful decisions."  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228 (3d Cir. 2011).

This case has none of the coordinated, otherwise-irrational actions necessary to imply a conspiracy.[5]  Thus, Plaintiffs' one-paragraph gesture towards motivation and conduct-against-

---

[5]  *See* Opp. 30-32 (citing *Steward Health Care Sys., LLC v. Blue Cross & Blue Shield of R.I.*, 311 F. Supp. 3d 468, 502 (D.R.I. 2018) (finding "assurances, conversations, and exchanges of value," "instructive" where "acts against self-interest are not fully explained" otherwise); *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 369 (3d Cir. 2004) ("[K]ey documents emphasized that the relevant price increases were not economically justified or supportable."); *Lifewatch Services Inc. v. Highmark Inc.*, 902 F.3d 323, 335 (3d Cir. 2018) (allegations establishing "improbability that the same…decision would be reached…independently"); *In re Domestic Drywall Antitrust Litig.*, 2019 WL 3254090, *30-31 (E.D. Pa. July 19, 2019) (many specific communications, including one referencing "verbal agreements," none of which alone would have been enough); *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 449-50 (E.D. Pa. 2018) (detailed allegations of trade association participation involving people with responsibility for price-setting);

interest "plus-factors" (Opp. 33-34), "simply restate[s] the (legally insufficient) fact ... [of] conscious parallelism." *Burch*, 662 F.3d at 227.

Because it is readily apparent why Cliffs and the USW would both be against this Merger, Plaintiffs stretch for "direct evidence" of an illegal conspiracy. Opp. 28-31. But only "smoking gun" evidence that "requires no inferences to establish" a conspiracy suffices. *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 844 F. Supp. 2d 571, 593-94 (E.D. Pa. 2012). In all of Plaintiffs cases, the defendants flatly stated that they had entered into an illegal agreement to prevent competition (and, for that matter, do so through coercive and restrictive conduct, not mere speech).[6]

That bears no resemblance to the August 3 public letter that Plaintiffs seize upon, a single page the Court will read for itself. Dkt. 84-4. In it, the USW does not admit an illegal agreement, threaten a strike, or say anything else that could be 'direct' or 'traditional' evidence of a conspiracy. Instead, it "unequivocally endorse[s]" a sale to Cliffs. *Id.* This is because, as the letter states, "Cliffs is the single steel producer in the best position to ensure that U.S. based manufacturing remains strong in this country with the support of the USW and its represented workforce." *Id.*

This public letter, written and delivered to U.S. Steel itself, is not the "smoking gun" that Plaintiffs need it to be, because it does not show a "conscious commitment to a common scheme

---

*Int'l Constr. Prods. LLC v. Caterpillar Inc.*, 2016 WL 4445232, *4 (D. Del. Aug. 22, 2016) (parallel conduct that was "not a plausible coincidence or an expectable response to a common business problem"); *Norfolk Monument Co. v. Woodlawn Mem'l Gardens, Inc.*, 394 U.S. 700, 701 (1969) (documentary evidence that defendants "jointly adopted various restrictive devices"); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707 (1962) (not addressing the existence of a conspiracy)).

[6]  *See* Opp. 29-30 (citing *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 94 (3d Cir. 2010) (defendant explicitly told plaintiff that defendants had entered into an agreement that was "probably illegal"); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 950-51 (N.D. Ill. 2018) (defendants explicitly told plaintiff they had entered into an illegal agreement to destroy his business); *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 468 (3d Cir. 1998) (defendant explicitly described the illegal agreement, including the specific plan, to plaintiff)).

designed to achieve *an unlawful objective*." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). It is not illegal for the USW to have a preferred bidder; to the contrary, that is an *express right* under the USW's bargaining agreement with U.S. Steel. Compl. ¶ 51. Antitrust law does not require Defendants to be neutral about who would buy an iconic American steel company, and Defendants' clear, public, and protected statements about their interests in this matter are not evidence of an *illegal* agreement, as opposed to a shared conclusion about where their interests lie. *See Schachar*, 870 F.2d at 399 ("Antitrust law does not compel your competitor to praise your product or sponsor your work."); *Kerwin v. Casino*, 802 F. App'x 723, 726 (3d Cir. 2020) (refusing to do business with another does not on its own "suggest conspiracy").

"The 'basic rule' is 'that the inference of a conspiracy is *always* unreasonable when it is based solely on parallel behavior that can be explained as the result of the independent business judgment of the defendants.'" *Ins. Brokerage*, 618 F.3d at 322 n.20. Plaintiffs have nothing more.[7]

### III. THE TORTIOUS INTERFERENCE CLAIMS ARE STILL MISSING NECESSARY ELEMENTS

#### A. The Merger Agreement Still Has Not Been Breached, So As A Matter Of Law It Has Not Been Interfered With

Plaintiffs concede that their contract has not been breached. Opp. 38; *see also* Compl. ¶ 267 ("Both U. S. Steel and NSC stand ready, willing, and able to perform under the Merger Agreement."). That requires dismissing Count 8, because "a plaintiff bringing an intentional interference claim must allege breach or nonperformance." *Dommel Props. LLC v. Jonestown Bank & Tr. Co.*, 626 F. App'x 361, 367 (3d Cir. 2015). Plaintiffs' counterarguments fail.

---

[7] Plaintiffs repeatedly claim (Opp. 1, 27, 35, 39) that Defendants do not contest various claims in the Complaint, including an interlocutory Bankruptcy Court finding that Cliffs had monopoly power (not finding any antitrust violation) for one material in one geographic market at one since-passed time. This motion to dismiss does not seek to "contest" allegations, including subject-to-appeal rulings that Plaintiffs make irrelevant by pleading a different market. Compl. ¶ 152. Cliffs will move to dismiss Plaintiffs' inadequate monopolization claims on the Court's schedule.

First, Plaintiffs are wrong to assert (Opp. 38-39) that they can simply claim a breach is imminent—particularly because they pled the opposite. Compl. ¶ 267. Plaintiffs' cases involved prior breaches or direct threats to forcibly prevent a party from completing a contract.[8] There is no allegation that Cliffs can prevent Plaintiffs from performing, so Plaintiffs are left "alleging only a failed attempt to sever the [contractual] relationship," which is insufficient. *Dreiling Millennium Tr. II v. Reliant Renal Care, Inc.*, 833 F. Supp. 2d 429, 434 (E.D. Pa. 2011); *see also U.S. Borax Inc. v. Zamek*, 2019 WL 13393064, *4 (E.D. Pa. July 26, 2019) (dismissing claim for injunction where "attempts to drive away or steal the key customer were not successful").[9]

Second, Plaintiffs rely on lower court decisions from 2000 and 2014 (Opp. 39-40) to ask this Court to ignore the Third Circuit's later 2017 holding that "a defendant is liable for intentional interference with contract only when the defendant induces or otherwise causes a third party not to perform the contract." *Charbonneau v. Chartis Prop. Cas. Co.*, 680 F. App'x 94, 99 (3d Cir. 2017). None of those cases actually held any party liable for making never-breached contracts more burdensome, and in any event a footnote (Opp. 40 n.22) about the principle of subsequent state court decisions provides no ground to ignore the Third Circuit's more recent holding. Nor does Plaintiffs' footnote (Opp. 40 n.23) about the irrelevant laws of other states. *See* Dkt. 1-1 at 50 (Plaintiffs bring tortious interference claims "under Pennsylvania law"). And even if claims

---

[8]    *See* Opp. 38-39 (citing *Ride the Ducks of Phila., LLC v. Duck Boat Tours, Inc.*, 2005 WL 1583514, *2 (3d Cir. 2005) (affirming injunction when defendants pledged to drive their boats down a ramp in violation of plaintiff's contract with a third-party); *SecureInfo Corp. v. Bukstel*, 2003 WL 21961370, *6-7 (E.D. Pa. May 8, 2003) (defendant had already sent plaintiffs' confidential information to third parties); *BIEC Int'l, Inc. v. Glob. Steel Servs., Ltd.*, 791 F. Supp. 489, 528, 549 (E.D. Pa. 1992) (attempts to induce third-parties to breach their confidentiality clauses credible when defendant had already breached their own confidentiality agreement).

[9]    In the secretly-recorded call that Plaintiffs attach, Cliffs proposed a follow-on deal, not a breach of the Merger Agreement: "Nippon would acquire the whole company and then flip the [non-Big River] assets to [Cliffs] … the Nippon deal stays put, stays in place." Dkt. 84-5 at 4.

14

based on increased burden were allowed, Plaintiffs do not spend a word in the Complaint explaining how Cliffs made performing the Merger Agreement more expensive or burdensome.

**B.    Plaintiffs' New Prospective Contract Theory About Post-Merger Investments Is Neither Pleaded Nor Viable**

Because all of their allegations about prospective business relations in the event that the Merger does not close are too speculative to state a claim, Plaintiffs instead turn to allegations about business relations between Nippon Steel and U.S. Steel if the Merger *does* close.  Opp. 41-43.  But those would be post-Merger investments in a subsidiary made "[a]s part of the Merger," Compl. ¶ 166, not a "prospective contractual relationship with a third party."  *Tri-State Training & Safety Consulting, LLC v. Markawicz*, 2015 WL 5116754, *3 (E.D. Pa. Aug. 28, 2015); *see also Dunkin Donuts Franchising LLC v. Claudia III, LLC*, 2014 WL 12618097, *2 (E.D. Pa. Dec. 5, 2014) (dismissing claim where alleged interference was to existing, not "prospective," relationship).  There is nothing in paragraph 166 of the Complaint or anywhere else that details "***particular*** anticipated contracts" with any third parties, *Fresh Made, Inc. v. Lifeway Foods, Inc.*, 2002 WL 31246922, *12 (E.D. Pa. Aug. 9, 2002), much less one that Defendants took "purposeful action … specifically intended" to prevent.  *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

**C.    Plaintiffs Still Have No Basis To Avoid PA-UPEPA Fee Shifting**

Plaintiffs' argument (Opp. 49) that they are not challenging "protected public expression" is addressed above.  They do not dispute that if the state claims are dismissed, they must pay Defendants' "attorney fees, court costs, and expenses of litigation." 42 Pa.C.S.A. § 8340.18(a)(1).

**<u>CONCLUSION</u>**

Counts 1, 4, 8 and 9 of Plaintiffs' Complaint should be dismissed with prejudice.

Dated: February 28, 2025

Respectfully submitted,

By:  */s/ William Pietragallo, II*

**QUINN EMANUEL URQUHART**
**& SULLIVAN LLP**

Andrew J. Rossman (*pro hac vice*)
Steig D. Olson (*pro hac vice*)
Owen F. Roberts (*pro hac vice*)
Mario O. Gazzola (*pro hac vice*)

295 Fifth Avenue
New York, NY 10016
(212) 849-7000 (Phone)
(212) 849-7100 (Fax)
andrewrossman@quinnemanuel.com
steigolson@quinnemanuel.com
owenroberts@quinnemanuel.com
mariogazzola@quinnemanuel.com

*Attorneys for Defendants Cleveland-Cliffs*
*Inc. and Lourenco Goncalves*

**PIETRAGALLO GORDON ALFANO**
**BOSICK & RASPANTI, LLP**

William Pietragallo, II (PA ID No. 16413)
Peter St. Tienne Wolff (PA ID No. 208433)
Matthew R. Barnes (PA ID No. 328771)
Quintin DiLucente (PA ID No. 330648)

One Oxford Center, 38th Floor
Pittsburgh, PA 15219
(412) 263-1818 (Phone)
(412) 263-2001 (Fax)
wp@pietragallo.com
psw@pietragallo.com
mrb@pietragallo.com
qd@pietragallo.com

*Attorneys for Defendants Cleveland-Cliffs*
*Inc. and Lourenco Goncalves*

16